EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                          PLAINTIFF

v.                                     CIVIL ACTION NO. 3:20cv415-DPJ-FKB

THE REAL PROPERTY KNOWN AS
115 ROSEDOWNE BEND
MADISON, MISSISSIPPI 39110                        DEFENDANT PROPERTY

**AFFIDAVIT IN SUPPORT OF VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

      I, George Collins, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

      1.     I have been a Task Force Agent with the Federal Bureau of Investigation (FBI) Jackson, Mississippi Division Field Office, Pascagoula Resident Agency, since 2012. As such, I am a deputized federal officer. I am a sworn peace officer employed as an investigator by the Mississippi State Auditor's Office.

      2.     On June 22, 2020, the United States filed a Verified Complaint for Forfeiture *in Rem* (Complaint) against the above-captioned real property.

      3.     I make this affidavit in support of the Complaint on the grounds that there is a reasonable belief that the real property known as 115 Rosedowne Bend, Madison, Mississippi 39110 (the "defendant property") is subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and (C), because it is real property involved in a transaction in violation of 18 U.S.C. §§ 1956 and 1957, and "constitutes or is derived from proceeds traceable to a … a 'specified unlawful activity' (as defined in section 1956(c)(7) of this title) …" The specified unlawful activity is theft or bribery

concerning programs receiving Federal funds in violation of 18 U.S.C. § 666(a)(1)(A). A violation of 18 U.S.C. § 666(a)(1) is a specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(D).

4. This affidavit is intended to show merely that there is sufficient evidence demonstrating a reasonable belief that the real property is subject to forfeiture and does not set forth all of my knowledge about this matter.

Investigation into Status of Defendant Property Prior to Complaint

5. On or about June 21, 2019, the Mississippi State Auditor's Office was alerted to possible fraud related to a scheme involving a third-party contractor in the Temporary Assistance to Needy Families (TANF) program and the Executive Director of the Mississippi Department of Human Services (MDHS) at that time, John Davis (DAVIS). The initial investigation resulted in state charges in Hinds County court case numbers 25CI1:20-cr-00049-AHW, 25CI1:20-cr-00052-EFP, 25CI1:20-cr-00053-EFP, 25CI1:20-cr-00055-TTG, 25CI1:20-cr-00056-TTG, 25CI1:20-cr-00050-TTG, 25CI1:20-cr-00054-EFP, and 25CI1:20-cr-00051-AHW, against six individuals related to a conspiracy to steal approximately $4,000,000.00 in federal funds. This notice to the Mississippi State Auditor's Office coincided with the yearly audit for fiscal year 2019 that was being completed by the Mississippi State Auditor's Office. The findings for fiscal year 2019, issued at the beginning of May 2020, disclosed that the State Auditor's Office, in addition to the $4,000,000.00 fraud, also questioned an additional $90,000,000 in expenditures that violated Code of Federal Regulation standards. The described conduct, in many instances, was also consistent with the violation of criminal statutes. The conclusion was that $94,000,000.00 out of the $98,000,000.00 in federal funds granted to the State of Mississippi/MDHS during fiscal year were not appropriately expended. The report focused on suspected fraud and other noncompliance with

federal law during fiscal year 2019 by the MDHS and/or third-party contractors receiving federal funds from MDHS.

6. On or about February 12, 2020, the FBI and the Office of Inspector General for the U.S. Department of Health and Human Services (HHS-OIG), began an investigation into possible criminal violations related to the use of federal funds provided to the MDHS. DAVIS took over as the Executive Director in January 2016 after decades of service in the MDHS, and from that point until June 2019, DAVIS was responsible for overseeing the distribution of federal funds from TANF, State Administrative Matching Grants for the Supplemental Nutrition Assistance Program (SNAP), Child Care and Development Block Grant, Child Care Mandatory and Matching Funds of the Child Care and Development Fund, and Social Services Block Grant. Some of these funds were used by MDHS while others were subgranted to organizations in the community to help fulfill the goals and mandates of those programs. The largest subgrantees were the Mississippi Community Education Center (MCEC) and the Family Resource Center of North Mississippi (FRC). Both MCEC and FRC also were able to further subgrant to other organizations to meet the goals of the programs.

7. One of the requirements for the awarding of contracts and grants is that they are obtained pursuant to a competitive procurement process as defined in Title 2, Subpart D of the Code of Federal Regulations. *See* 2 C.F.R. § 200.320. The audit revealed that in some instances DAVIS directed FRC or MCEC to award contracts to certain organizations without following any of the competitive bidding process. The audit revealed that there were numerous contracts awarded to Theodore Marvin DiBiase Jr. (DIBIASE JR.), his father, Theodore Marvin Dibiase (DIBIASE SR.), and his brother, Brett DIBIASE (B. DIBIASE). Each is a former professional wrestler. After retiring from wrestling, B. DIBIASE was hired by DAVIS into a senior position,

3

Deputy Administrator, at MDHS, a position he held for seven months in 2017. During that time, $2,000,000.00 was granted by MDHS to the Heart of David (HOD) Ministries run by DIBIASE SR. despite the potential conflict of interest based on B. DIBIASE's position.[1] After B. DIBIASE left MDHS, an additional grant for $1,562,500.00 was awarded to HOD.

8.  Thereafter, in December 2018, B. DIBIASE, representing Recover2, LLC, a company that is not a registered corporation, signed a contract for $48,000.00, for B. DIBIASSE to "inform, update, and education (sic) MDHS staff and partners in identifying opioid abuse" as well as teach 24 training sessions on opioids. Instead of fulfilling the contract, however, B. DIBIASE went to RISE in Malibu, a drug rehabilitation center in Malibu, California, for four months. Although the signed contract was directly with MDHS, DAVIS directed MCEC to make four $40,000.00 wire payments, using TANF funds, to Rise in Malibu to cover B. DIBIASE's treatment fees. MCEC coded those funds to make it appear that they were not for B. DIBIASE's drug treatment. Government funds were also used to pay for DAVIS to visit B. DIBIASE at the treatment center for no discernable legal purpose. These actions underlie the state criminal charges pending in Hinds County, Mississippi.

9.  DIBIASE JR. has two companies. The first, Priceless Ventures LLC, was incorporated in Mississippi in May 2017 with DIBIASE JR. as the agent and manager. In multiple contracts covering various time periods from June 2017 through October 2019, Priceless Ventures LLC received contracts from MCEC and/or FRC totaling approximately $1,510,000.00. For each contract, FRC and/or MCEC also reimbursed travel expenses which included first class airfare, expensive meals, luxury hotels, and entertainment costs.[2] In total, Priceless Ventures LLC

---

[1] Family members employed by the agency cannot participate in the contracts with individuals, including family members, with a real or apparent conflict of interest. See 2 C.F.R. § 200.318(c).
[2] Pursuant to 2 C.F.R. § 200.403, travel costs must be necessary, reasonable, and properly documented.

received $500,000.00 from MCEC in fiscal year 2018 and $199,500.00 in fiscal year 2019. The organization received $1,643,821.00 from FRC in fiscal year 2018 and $104,167.00 in fiscal year 2019. The contracts were for leadership outreach services and training, self-help programs, and "emergency food assistance." In the contract that ran from May 22, 2018 through September 30, 2018, nearly $500,000.00 in SNAP funds were used for "emergency food assistance." FRC revealed to the Mississippi State Auditor's Office that no work was performed on the contract, but that Priceless Ventures LLC was still paid $497,987.00 in SNAP funds.

10. The second company owned by DIBIASE JR is Familiae Orientem LLC. This organization filed for registration as a Limited Liability Company (LLC) with the Secretary of State in Wyoming on or about June 25, 2018. The application filed to register Familiae Orientem LLC as a foreign LLC with the State of Mississippi indicated it was filed on or about July 17, 2018, with Scott Elliot as the only Member publicly listed. It is listed as an Administrative Management and General Management Consulting Service. Federal law enforcement contacted Scott Elliott who indicated that he does not control this company. He was approached by DIBIASE JR., a former employee of his at an insurance company and personal friend, about helping to set up Familiae Orientem LLC, and Elliott received one percent ownership in the company. Other than the establishment of Familiae Orientem LLC, Scott Elliott was unaware of any activity conducted by or on behalf of Familiae Orientem LLC. Elliott indicated he was not aware of Familiae Orientem LLC receiving any contracts, grants, or payments of any kind.

11. On June 26, 2018, DIBIASE JR., in his purported capacity as the President of Familiae Orientem LLC, and Christi Webb, in her capacity as the Executive Director of the Family Resource Center of North Mississippi (FRC), entered into a contract for the time period of June

25, 2018 through June 24, 2019.[3] Under the contract, Familiae Orientem LLC would be paid $1,000,000.00 to "coordinate and create the RISE Program serving inner-city youth." Under the contract, there is a non-exhaustive list of 15 responsibilities in its scope of duties. Those duties included creating the "RISE Program to address the multiple needs of inner-city youth," developing and providing a "strategic gen+ approach for implementation within the Rise communities," assessing the results, and engaging employers "to assist in improving opportunity and outcomes in the workforce."

12. Personnel at FRC indicated to the Mississippi State Auditor's Office that DAVIS instructed FRC to make payments on the contract before the program was designed and required staff from MDHS, FRC, and MCEC to attend a "Legislative Launch" and "planning session" at the Westin Hotel in June 2018. Although the contract required Familiae Orientem LLC to provide all personnel necessary to carry out the program, documentation from the planning session obtained by the Mississippi State Auditor's Office demonstrated that employees of FRC, MCEC, and MDHS were designated to fulfill the contract. MDHS personnel indicated that shortly after the program launch in June 2018, DAVIS claimed the program would be taken "in house" to MDHS, and the project was later abandoned.

13. Despite the fact that the only work done on the contract was the planning session, FRC wrote two checks totaling $700,000.00 to Familiae Orientem LLC using federal TANF funds obtained by FRC from MDHS. Check 2403 for $350,000.00 was drawn on FRC's Community Bank account ending 1405, and dated June 26, 2018. Check 2949 for $350,000.00 was drawn on the same account and was dated August 23, 2018. Familiae Orientem LLC/DIBIASE JR. deposited the checks and kept all the money.

---

[3] The contract was signed the day after its listed effective date.

14. Law enforcement traced the funds/unlawful proceeds provided by FRC to the purchase of the defendant property on or about November 16, 2018. The defendant property was purchased for approximately $1,450,000.00. DIBIASE JR. provided a total of $25,000.00 in good-faith deposits/earnest money for the defendant property. On or about September 19, 2018, check 1056 for $5,000.00 was made out to Livingston Land Company. The check was drawn on Priceless Ventures LLC's checking account ending 0778 at Bank Plus. On or about November 8, 2018, an additional $20,000.00, in the form of a cashier's check, was obtained for Livingston Land Company. The cashier's check was purchased with funds from the Priceless Ventures LLC account ending 8043 at Renasant Bank. The account ending 8043 was opened at Renasant Bank on October 26, 2018.

15. In addition, a down payment of approximately $401,304.37 was made on the defendant property which was almost entirely, if not entirely, paid for using the funds that FRC paid to Familiae Orientem on the uncompleted Rise Program contract. DIBIASE JR. moved proceeds through three bank accounts before $401,304.37 was sent from the last bank account via a wire transfer to the attorney handling the closing on the defendant property. Analysis of the bank accounts shows that at least $365,303.23 of the funds used for the down payment were unearned funds that DIBIASE received from FRC on the Rise Program contract. The number is less than the total down payment because of two other deposits, not yet determined to be from the specified unlawful activity, into the affected bank accounts, and expenditures made out of the accounts. As more explicitly detailed below, DIBIASE JR. put all $700,000.00 paid by FRC into Familiae Orientem LLC bank account ending 2604 at Bank Plus. Thereafter, DIBIASE JR. used at least $692,759.55 of the $700,000.00 (with a $697,759.55 check) to fund a Familiae Orientem LLC bank account ending 2066 at Renasant Bank. DIBIASE JR. then did an internal transfer of

7

$401,304.37 to DIBIASE JR. and his wife's bank account ending 4599 at Renasant Bank. At least $396,304.37 of the $401,304.37 was from the original $700,000.00. Last, DIBIASE JR. wired $401,304.37 to the attorney to make the down payment on the defendant property. Of that, at least $365,303.23 came from the $700,000.00. DIBIASE JR. and his wife used a mortgage loan from Renasant Bank to pay the remaining purchase price on the defendant property.

16.   On August 8, 2018, DIBIASE JR. opened bank account ending 2604 for Familiae Orientem LLC at Bank Plus. On that same day, there were two deposits into the account. One deposit was for $5,000.00. These funds came from the Priceless Ventures LLC account ending 0778 at Bank Plus. The other deposit was the June 26, 2018 FRC check 2403 for $350,000.00. On August 30, 2018, the August 26, 2018 FRC check 2949 for $350,000.00 was deposited into the same account. During the life of the account, no further deposits were made into the account. A summary of relevant activity for account ending 2604 is as follows:

| Date | Deposit Amount | Debits | Type | Balance |
|---|---|---|---|---|
| 8/7/18 | | | | 0.00 |
| 8/8/18-account opened | $5,000.00 | | From Priceless Ventures LLC account ending 0778 | $5,000.00 |
| 8/8/18 | $350,000.00 | | Check 2403 from FRC | $355,000.00 |
| 8/9/18-8/24/18 | | $919.35 | Personal expenditures | $354,080.65 |
| 8/30/18 | $350,000.00 | | Check 2949 from FRC | $704,080.65 |
| 9/4/18-9/10/18 | | $2,424.21 | Personal expenditures | $701,656.44 |
| 10/1/18 | | $2400.00 | Cash withdrawal | $699,256.44 |
| 10/31/18 | | $697,759.55 | Check 1010 deposited into Familiae Orientem LLC account ending 2066 at Renasant Bank | $1,000.00 |

17. Based on the foregoing, at least $692,759.55 of the money in check 1010 came from the FRC payments. This figure was reached by addressing the analysis under the most conservative assessment that all $5,000.00 was from a legitimate source and remained in the account until the time the bulk of funds was moved via check 1010. Thus, $5,000.00 was deducted from the money moved via check 1010. This is deducted from the face value of the check, $697,759.55 (-$5,000.00) for a total of $692,759.55.

18. On October 26, 2018, Familiae Orientem LLC opened account ending 2066 at Renasant Bank. On October 30, 2018, check 1010 on the Bank Plus account ending 2604 was used to fund the Familiae Orientem LLC account ending 2066. No further deposits were made into the account during the relevant time period. A summary of relevant activity is as follows.

| Date | Credit | Debit | Type | Balance |
|---|---|---|---|---|
| 10/29/18 | | | | 0.00 |
| 10/30/18 | $697,759.25 | | Check 1010 drawn on Bank Plus account ending 2604 | $697,759.25 |
| 11/15/18 | | $34,338.03 | Payment for a tractor | $663,421.11 |
| 11/16/18 | | $401,304.37 | Transferred to DIBIASE JR. and wife's account ending 4599 at Renasant Bank | $262,116.85 |

19. Based on the foregoing, at least $396,304.37 ($401,304.36-$5,000.00) of the funds transferred out of the account on November 16, 2018, were from the $700,000.00.

20. On October 26, 2018, DIBIASE JR. and his wife, Kristin, opened checking account ending 4599 at Renasant Bank. A summary of relevant activity on that account is as follows:

| Date | Credit | Debit | Type | Balance |
|---|---|---|---|---|
| 10/29/18 | | | | 0.00 |
| 10/30/18 | $32,000.00 | | Check from Ross Cattle Co. memo listed as Kubota 6060 | $32,000.00 |
| 10/31/18 | $1.04 | | Interest payment on account | $32,001.04 |
| 11/9/18 | | $1,000.00 | Check 1000 labeled as childcare | $31,001.04 |
| 11/16/18 | $401,304.27 | | Transfer in from Familiae Orientem account ending 2066 | $432,305.31 |
| 11/16/18 | | $401,304.27 | Wire Transfer out of funds to attorney handling the closing of defendant property (down payment defendant property) | $31,001.04 |

21.     Based on the foregoing, and addressing the analysis under the most conservative assessment, the $32,000.00 funds from the check and $1.04 in interest remained with the money that was transferred to the attorney (minus the $1,000.00 spent of the $32,001.04 prior to the transfer), the amount of FRC funds wired to the attorney for closing costs is no less than $365,303.23 ($401,304.27-5,000.00-31,001.04). Thus, at least $365,303.23 of the unearned FRC funds were used as a down payment for the defendant property.

22.     Based on my training and experience, the transfer of money between multiple accounts, and the commingling of money from multiple sources helps to conceal the nature, source, location, ownership, or proceeds from a specified unlawful activity. In the instant case, DIBIASE

JR. utilized three bank accounts, at two separate banks, under two different account holders, before he moved a significant portion of the proceeds via wire transfer to make the down payment on and complete the purchase of the defendant property. In two accounts, the funds were commingled with funds from other sources. Three of the fund movements occurred within seventeen days and two of those three movements of funds occurred on the same day.

23. Based on the foregoing, there a reasonable belief that the defendant property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

24. The above statements are true and accurate to the best of my knowledge and belief.

This, the 22nd day of June, 2020.

GEORGE COLLINS
Task Force Officer
Federal Bureau of Investigation

SUBSRIBED and SWORN before me on the 22nd day of June, 2020

HONORABLE LINDA R. ANDERSON
UNITED STATES MAGISTRATE JUDGE