

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.  CIVIL ACTION NO. 3:20CV415-DPJ-FKB

THE REAL PROPERTY KNOWN AS
115 ROSEDOWN BEND
MADISON, MISSISSIPPI 39110

**THEODORE MARVIN DIBIASE JR.'S ANSWER TO THE COMPLAINT**

Claimant, by and through undersigned counsel, responds as follows to the allegations of the Complaint:

1. It is admitted that this is an action seeking the forfeiture of the defendant property. All other allegations in paragraph 1 are denied.

2. The allegations in paragraphs 2 are admitted.

3. The allegations in paragraph 3 are admitted.

4. The allegations regarding venue in paragraph 4 are admitted. The allegation that an "act and/or omission[]" occurred that gives rise to a forfeiture is denied.

5. It is admitted that Title 18 United States Code, Section 666(a)(1)(A) is a specified unlawful activity. All other allegations in paragraph 5 are denied.

6. The allegations in paragraph 6 are legal conclusions that do not require a response. To the extent the allegations in paragraph 6 are intended to allege the defendant property is subject to forfeiture, or that a violation of any federal law giving rise to forfeiture has occurred, those allegations are denied.

7. The allegations in paragraph 7 are legal conclusions that do not require a response. To the extent the allegations in paragraph 7 are intended to allege the defendant

property is subject to forfeiture, or that a violation of any federal law giving rise to forfeiture has occurred, those allegations are denied.

8. The allegations in paragraph 8, including the allegations incorporated by reference, are denied.

9. The allegations in paragraph 9 are admitted. The *lis pendens* placed in the chain of title of the defendant property at the Madison County Chancer Clerk's Land Records Office is a restraint on the use of the defendant property, that was lodged without probable cause to believe the defendant property is subject to forfeiture.

10. The allegation in paragraph 10 that a judgment of forfeiture is warranted or that the government is entitled to any relief whatsoever is denied. The remainder of paragraph 10 does not require a response, and as such, is denied.

11. The averment in the verification attached to the complaint that the information contained in the Complaint is "true" is denied. Significant and relevant additional evidence bearing directly on the issue of whether a violation of Sections 666(a)(1)(A), 1956 and 1957 have occurred exists in the custody and control of the sources cited by the declarant that have been withheld form the affidavit attached to the complaint, and incorporated by reference into the complaint at paragraph 8.

12. The claimant is without sufficient knowledge to either admit or deny paragraph 1 of Exhibit A to the Complaint. As such, paragraph 1 is denied.

13. Paragraph 2 of Exhibit A is admitted.

14. Paragraph 3 of Exhibit A is a legal conclusion that does not require a response. As such, paragraph 3 is denied.

15. It is admitted that the content of Exhibit A does not, and was not intended to, establish probable cause to believe a violation of Title 18, United States Code, Section 666(a)(1)(A) has occurred. The claimant is without sufficient knowledge to either admit or deny the remainder of paragraph 4 of Exhibit A to the Complaint. As such, the remainder of paragraph 4 is denied.

16. It is denied that the Audit Report asserts that "$90,000,000 in expenditures [] violated Code of Federal Regulation standards." The Audit Report expressly states that its sole purpose was to "describe the scope of [the] testing of internal controls over compliance and the results of that testing based on the requirements of OMB Uniform Guidance." *See* Audit Report, Page 2, Attached as Exhibit A. The Audit Report "is not suitable for any other purpose." Ex. A. at 2. The Audit Report "does not provide a legal determination of the Mississippi Department of Human Services' compliance" with the requirements set forth in the "*OMB Uniform Guidance Compliance Supplement.*" *See* Ex. A, at 3. It is denied that the Audit Report describes any particular conduct as "consistent with the violation of criminal statutes." It is denied that the Audit Report concluded that "$94,000,000.00 out of the $98,000,000.00 in federal funds granted to the State of Mississippi/MDHS during fiscal year [sic] were not appropriately expended." The Audit Report repeatedly describes the various expenditures that ultimately comprise the $94,000,000.00 amount described in paragraph 5 of Exhibit A as "questioned costs." The Audit Report repeatedly draws conclusions that the internal control mechanism utilized by Mississippi Department of Human Services ("MDHS"), Mississippi Community Education Center ("MCEC") and the Family Resource Center of North Mississippi ("FRC") did not comply with the aforementioned OMB standards. The Audit Report does not affirmatively conclude that any particular amount of funding was "not appropriately expended." The claimant is without

sufficient knowledge to either admit or deny the remaining allegations in paragraph 5 of Exhibit A to the Complaint. As such, all remaining allegations in paragraph 5 are denied.

17. The claimant is without sufficient knowledge to either admit or deny the allegations in paragraph 6 of Exhibit A to the Complaint. As such, paragraph 6 is denied.

18. It is denied that "[o]ne of the requirements for the awarding of contracts and grants is that they are obtained pursuant to a competitive procurement process as defined in Title 2, Subpart D of the Code of Federal Regulations. *See* 2 C.F.R. § 200.320." Title 2 C.F.R § 200.320(f)(3) permits "procurement by noncompetitive proposals" when the "pass-through entity expressly authorizes noncompetitive proposals." Upon information and belief, the Office of the State Auditor and the FBI are in possession of MDHS documents entitled "Administrative Review Memorandum – Subgrants Only" that permit the use of non-solicitation contracts to execute the various Social Services Block Grants ("SSBG's"), i.e. TANF and other similar SSBG's funded to FRC and MCEC by MDHS. These documents include authorization signatures of representatives of MDHS, an Assistant Attorney General, and the Director of MDHS Program Integrity, among others. It is admitted that multiple contracts were let to Priceless Ventures, LLC ("Priceless") and to Familiae Orientum, LLC ("Familiae") for professional services from both MCEC and the FRC, and that the work on those contracts was performed by Theodore Marvin DiBiase, Jr. The claimant is without sufficient knowledge to either admit or deny the remaining allegations in paragraph 7 of Exhibit A. As such, the remaining allegations in paragraph 7 are denied.

19. The claimant is without sufficient knowledge to either admit or deny the allegations in paragraph 8 of Exhibit A. As such, the allegations in paragraph 8 are denied.

20.	The allegation in paragraph 9 that "[f]or each contract, FRC and/or MCEC "reimbursed travel expenses which included first class airfare, expensive meals, luxury hotels, and entertainment costs" is denied. It is admitted that John Davis and other staff at MDHS had Claimant's credit card, and may have used said card to pay for their own travel, however, the routine and habit of Claimant was to pay the costs associated with travel, lodging and meals himself. Claimant is without sufficient knowledge to admit or deny what the sources of the reimbursements were, and as such it is denied that the reimbursements were paid from any specific entity or source of funding. It is denied that Claimant ever agreed to perform services for "emergency food assistance." It is denied that Claimant ever failed to perform the work he was contracted to perform. It is admitted that Priceless was paid by both FRC and MCEC for performing under the terms of the various contracts. With regard to the remaining allegations in paragraph 9, including the specific dollar amounts cited, claimant is without sufficient knowledge to either admit or deny those allegations. As such, those remaining allegations are denied.

21.	With regard to paragraph 10 of Exhibit A, it is admitted that Claimant is the principal member of Familiae holding 99% of the membership interest. It is admitted that Familiae's organization documents were filed with the Wyoming Secretary of State on June 25, 2018. It is denied that the organization records were filed on July 17, 2018. It is admitted that Scott Elliott is the only Member listed in the Articles of Organization. It is admitted that Scott Elliott does not control Familiae. Claimant is without sufficient knowledge to either admit or deny what Scott Elliott said to federal law enforcement, and as such those allegations in paragraph 10 of Exhibit A are denied. It is admitted that Claimant gave Elliott, his friend, a 1 percent ownership interest in Familiae.

22. With regard to paragraph 11 of Exhibit A, it is admitted that Familiae and FRC entered into a contract to create and implement the RISE program. Claimant does not have a copy of this contract and as such, he is without sufficient knowledge to admit or deny the remaining allegations in paragraph 11 of Exhibit A. As such, the remaining allegations in paragraph 11 of Exhibit A are denied.

23. With regard to paragraph 12 of Exhibit A, it is admitted that a meeting occurred at the Westin Hotel at some point, for the purpose of discussing the RISE program. It is also admitted that at some point in close proximity this this meeting, John Davis informed Claimant that staff from MCEC, FRC and MDHS would be used to perform some of the work related to the execution of the RISE program. It is denied "that employees of FRC, MCEC and MDHS were designated to fulfill the contract." Claimant was advised by John Davis that he was responsible for paying all costs associated with the contract, including any services provided by persons who were not employed by FRC, MCEC or MDHS. Claimant continued to perform under the terms of the contract for the duration of his engagement with FRC and MCEC. FBI and HHS-OIG Agents were provided with this information on May 8, 2020, including the names of witnesses that Claimant worked with in the community to further his efforts to implement the RISE program in the Jackson, Mississippi area. It is admitted that shortly before John Davis retired in Mid-2019, he indicated to the Claimant that the RISE program would be taken "in-house" and overseen at MDHS as opposed to being overseen by FRC or MCEC. Upon information and belief, this occurred as a result of the Governor directing John Davis to cease funding and working with FRC because FRC's Executive Director, Christie Webb, was openly supporting Jim Hood in the race for Mississippi Governor. The claimant, who witnessed Bryant give that direction to Davis, was subsequently informed by Davis that his contracts with FRC

would be moved to MCEC. This did not affect Claimant's performance under the contract. It is denied that the "project was abandoned" before the time Claimant's engagement with MDHS, FRC and MCEC all ceased. Any impediment to Claimant's performance under the contract were the direct result of actions taken by John Davis, the Executive Director of MDHS. Those actions constitute an unlawful interference with Claimant's performance under the contract. All other allegations not specifically addressed in paragraph 12 of Exhibit A are denied.

24. With regard to paragraph 13 of Exhibit A, it is denied that "the only work done on the contract was the planning session." This is a misstatement of the facts known to the government as discussed *infra*. It is admitted that FRC wrote two checks to Familiae totaling $700,000.00 as payment on the relevant contract. Claimant is without sufficient knowledge to admit or deny what the source of those funds was. The Auditor's report indicates that "some recipients of funds from both MCEC and FRC were not aware that they were being awarded federal monies when granted contracts, grants, or awards. Neither MCEC or FRC provided the required federal information on *any* contract, grant or award that stated the source of the funds, including the name of the Federal Program or the CDFA number. Without these disclosures auditors are **unable to determine** if contractors or second tier subgrantees of MCEC or FRC were aware of allowable cost criteria or restrictions." *See* Audit Report at 10. As such, the allegations that the $700,000.00 from FRC were "TANF funds" is denied. Claimant is without sufficient knowledge to either admit or deny which of FRC's bank accounts were used to fund either of the payments made to Familiae. As such, those allegations are denied. It is admitted that Familiae, and ultimately the claimant, kept the aforementioned proceeds, and did not share them with any other person other than his spouse. All other allegations not specifically addressed in paragraph 13 of Exhibit A are denied.

25. With regard to paragraph 14 of Exhibit A, Claimant is without sufficient knowledge to either admit or deny whether "[l]aw enforcement traced the funds/unlawful proceeds provided by FRC to the defendant property on or about November 16, 2018." As such that allegation is denied. It is expressly denied that the money Familiae was paid from FRC, or any other source, was "unlawful." It is admitted that the purchase price of the defendant property was $1,450,000.00. The claimant is without sufficient knowledge to either admit or deny the remaining allegations that detail specific dates and amounts of various financial transactions. As such, the remaining allegations in paragraph 14 of Exhibit A are denied.

26. With regard to the allegations in paragraph 15 of Exhibit A, it is admitted that approximately $401,304.37 was paid in cash at the time of the purchase of the defendant property. It is denied that the RISE Program contract was "uncompleted," as Claimant had no control over the cessation of his performance under that contract. It is admitted that a mortgage loan was used to complete the purchase of the defendant property. The claimant is without sufficient knowledge to either admit or deny the remaining allegations in paragraph 15 of Exhibit A. As such, those remaining allegations are denied.

27. The claimant is without sufficient knowledge to either admit or deny the allegations in paragraph 16 of Exhibit A to the Complaint. As such, paragraph 16 is denied.

28. The claimant is without sufficient knowledge to either admit or deny the allegations in paragraph 17 of Exhibit A to the Complaint. As such, paragraph 17 is denied.

29. The claimant is without sufficient knowledge to either admit or deny the allegations in paragraph 18 of Exhibit A to the Complaint. As such, paragraph 18 is denied.

30. The claimant is without sufficient knowledge to either admit or deny the allegations in paragraph 19 of Exhibit A to the Complaint. As such, paragraph 19 is denied.

31. The claimant is without sufficient knowledge to either admit or deny the allegations in paragraph 20 of Exhibit A to the Complaint. As such, paragraph 20 is denied.

32. The claimant is without sufficient knowledge to either admit or deny the allegations in paragraph 21 of Exhibit A to the Complaint. As such, paragraph 21 is denied.

33. The allegations in paragraph 22 are denied. The Claimant in every instance, and in some instances his spouse, are listed as the sole owner(s) and signatory on each account described in this affidavit. Claimant is the clear and unambiguous signer of all of the checks and other documents associated with the respective accounts. Moreover, all of the relevant federal income tax returns for Familiae and Priceless have been produced to the government in response to a grand jury subpoena. On each and every tax return for Priceless and Familiae, Claimant is identified as either the sole owner, or the 99% owner of the respective entities. Claimant and his spouse are listed on the closing paperwork associated with the purchase of the defendant property, and Claimant is the signatory on each of the contracts between Priceless and Familiae and MCEC and FRC. The Auditor and the FBI have all of this information in their possession. As such, it is denied that the affiant has the requisite "training and experience" to credibly opine about whether the use of multiple bank accounts, each of which the ownership and control are openly documented to be the Claimant, is in any way indicative of an intent to conceal the source of the funds held therein.

34. The allegations in paragraph 23 of Exhibit A are denied.

35. The allegation in paragraph 24 of Exhibit a is denied.

## AFFIRMATIVE DEFENSES

Having fully answered the allegations in the Complaint, the defendants set forth the following affirmative defenses:

## First Defense

The Complaint fails to allege sufficient facts to constitute a cause of action on which relief can be granted to the Plaintiff against the Defendant Property or Claimant's interest in same.

## Second Defense

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

## Third Defense

Claimant invoke the defenses, protections, and limitations of Title 18, United States Code, Section 981(d)(1),(2),(3)&(5).

## Fourth Defense

Any and all actions taken by the Claimant with respect to any of the matters alleged were taken in good faith and in accordance with established industry practice.

## Fifth Defense

The Plaintiff's claims are barred, in whole or in part, because the Claimant has complied with all applicable and material statutes, regulations, standards, specifications and laws of the federal and state governments.

## Sixth Defense

The Plaintiff's claims are barred, in whole or in part, because the claimant did not directly or indirectly engage in any conduct in violation of any state or federal law.

## Seventh Defense

The Complaint fails to allege sufficient facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

## Eighth Defense

The forfeiture sought by the Complaint would be excessive and would violate the Excessive Fines Clause of the Eighth Amendment to the Constitution.

Claimant reserves the right to add additional affirmative defenses as they may be determined by further proceeding in this matter.

Claimant demands a trial by jury pursuant to Federal Rule of Civil Procedure 38 and Rule G(9) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

Dated: August 10, 2020.

Respectfully submitted,

THEODORE MARVIN DIBIASE, JR.
CLAIMANT

By: _____
J. Scott Gilbert
Counsel for the Claimant

OF COUNSEL:

J. Scott Gilbert, Esq. (MS Bar No. 102123)
WATKINS & EAGER PLLC
P.O. Box 650 Jackson, MS 39205-0650
Telephone: 601-965-1900
Facsimile: 601-965-1901
sgilbert@watkinseager.com

## CERTIFICATE OF SERVICE

I, the undersigned counsel for the claimant, have caused this pleading to be served on all interested parties via the CM/ECF system.

This the 10$^h$ day of August, 2020.

By: _____
J. Scott Gilbert