

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                     PLAINTIFF

v.                                          CIVIL ACTION NO. 3:20-cv-415-DPJ-FKB

REAL PROPERTY KNOWN AS
115 ROSEDOWNE BEND, MADISON,
MISSISSIPPI 39110                                        DEFENDANT PROPERTY

## GOVERNMENT'S RESPONSE TO CLAIMANTS' JOINT MOTION TO LIFT THE STAY

### FILED UNDER SEAL

The United States of America, by and through undersigned counsel, respectfully moves this Court to deny the Claimants' Joint Motion to Lift the Stay (*hereinafter* the "motion"). The motion asks the Court to lift the stay that applied to all but the filing of claims and answers, or in the alternative, to partially lift the stay for purposes of litigating the Claimants' Joint Motion to Dismiss the Verified Complaint.[1]  (Claimants' Motion: 1, *hereinafter* CM: page number). Because the stay in this matter is proper and there is no legal authority for litigating a substantive motion during a stay in a civil forfeiture matter, the Claimants' motion should be denied in all respects.

---

[1] It is unclear from the copy provided to the Government whether this motion was filed under seal. Pursuant to the Agreed Protective Order on the Verified Complaint for Forfeiture *In Rem*, this should be under seal.

1

I.      **Procedural and Factual History Relevant to the Stay**

On or about November 16, 2018, Ted DIBIASE JR. and Kristen DiBiase purchased the real property known as 115 Rosedowne Bend, Madison, Mississippi 39110 (*hereinafter* "the Defendant Property").

In the first week of February 2020, six individuals were arrested on Mississippi state charges related to a conspiracy to steal approximately $4,000,000.00 in federal funds (Hinds County: 25CI1:20-cr-0049-AHW, 25CI1:20-cr-00052-EFP, 25CI1:20-cr-00055-TTG, 25CI1:20-cr-00056-TTG, 25CI1:20-cr-00050-TTG, 25CI1:20-cr-00054-EFP, 25CI1:20-cr-00051-AHW). These charges arose out of actions by the Executive Director of the Mississippi Department of Human Services (MDHS), at that time John DAVIS, and third-party contractors who receive federal funds from MDHS. Those defendants include DAVIS, a close acquaintance of DIBIASE JR., and DIBIASE JR.'s brother, Brett DiBiase. DIBIASE JR. was not named in that investigation.

In or about April 2020, federal law enforcement engaged in investigative activities focused on certain actions of DIBIASE JR. On April 10, 2020, law enforcement contacted DIBIASE JR. and asked to speak to him regarding MDHS, DAVIS, and the third-party contractor issues. DIBIASE Jr. declined and Federal Bureau of Investigation Special Agent (SA) Nolan Gates left his card with contact information. Shortly thereafter, Mr. Scott Gilbert, counsel for DIBIASE JR., contacted SA Gates and indicated he would be in touch later.

As background information, on or about June 25, 2018, an organization named Familiae Orientem LLC filed for registration as a Limited Liability Company (LLC) with the Secretary of State in Wyoming. On those documents, DIBIASE JR. is listed as a member with a 99 percent interest, and Scott Elliott, who resided in Meridian, Mississippi, is listed as a member with a one (1) percent interest. Familiae Orientem LLC signed a contract with a third-party contractor on

2

June 26, 2018 in Mississippi. DIBIASE JR. signed the contract. On July 17, 2018, when Familiae Orientem LLC registered as a foreign LLC with the State of Mississippi, it listed Scott Elliott as the only member.[2]

On April 24, 2020, SA Gates went to the home of Scott Elliott in Meridian. According to his wife, Elliott was out on a walk and was on a conference call. Elliott's wife contacted him. When Elliott arrived home, he informed law enforcement that he had already contacted DIBIASE JR., who said that Elliott should call his (Elliott's) attorney. Instead, Elliott chose to speak with law enforcement. Elliott told the FBI, in summary, that DIBIASE JR. had approached him (Elliott) and asked him (Elliott) to help set up the company (Familiae Orientem). Elliott further stated to the FBI that he (Elliott) does not control the company, that he (Elliott) is not aware of any activity of the company, and that he (Elliott) is not aware of the company receiving any contracts, grants, or payments of any kind.

On May 4, 2020, the Mississippi Office of the State Auditor issued its Single Audit for Year Ending June 30, 2019 (*hereinafter* the "Audit"). The Audit questioned approximately $94,164,608.0008 of $98,379,121.00 of federal funds provided by MDHS, under DAVIS, to third-party contractor organizations. *Id.* at 249. Those organizations, often at the direction of the director of MDHS, would direct those federal funds to subgrantees in contracts. Under a section titled "Payments Directed by Former Executive Director," the report discussed contracts funded by federal funds received by Priceless Ventures LLC and Familiae Orientem LLC between 2017 and 2019 from third-party contractor organizations receiving federal funds from MDHS. *Id.* at 96-

---

[2] It is unclear why Familiae Orientem LLC was incorporated in Wyoming.

98. Law enforcement has determined that Priceless Ventures LLC and Familiae Orientem LLC are owned by DIBIASE JR.

Both organizations were listed in the Audit. *Id.* Further, the Audit noted "questioned costs" regarding over $2,000,000 in federal funds received by DIBIASE JR.'s organizations. *Id.* The Audit questioned whether multiple contracts were begun, let alone completed, by DIBIASE JR.'s companies, including the contract with Familiae Orientem LLC that forms the basis of the civil forfeiture complaint for the Defendant Property. *Id.* at 97. The affidavit that accompanies the civil forfeiture complaint alleges that Familiae Orientem LLC received a $1,000,000 contract to "'coordinate and create the RISE Program serving inner-city youth.'" Dkt. 3-1 at 6. Further, it alleges that almost no work was completed on the contract, but Familiae Orientem LLC was still paid $700,000.00 and kept all $700,000.00. Dkt. 3-1 at 6. It is alleged that at least $365,303.23 of the $700,000, traced directly to the federal funds, was used to purchase the Defendant Property. Dkt. 3-1 at 6-7.

On May 4, 2020, Mr. Scott Gilbert, representing DIBIASE JR., contacted SA Nolan regarding DIBIASE JR. A meeting later took place on May 8, 2020, between SA Nolan and other law enforcement officials and Mr. Gilbert. DIBIASE JR. was not present at the meeting.

On May 5, 2020, the Defendant Property was listed for sale.

On May 6, 2020, a grand jury sitting in the Southern District of Mississippi issued a subpoena to the custodian of records for Familiae Orientem LLC. *See* Attachment 1. Service was made to Elliott, the publicly listed member for Familiae Orientem LLC with the State of Mississippi.

On May 14, 2020, the Defendant Property Contract for the Sale and Purchase of Real Estate was signed.

On May 19, 2020, the subpoena was forwarded to Mr. Gilbert by Elliott's attorney, Nicholas R. Bain. Mr. Bain sent a letter to Mr. Gilbert that was copied to Assistant United States Attorney Dave Fulcher that indicated that Elliott "is not and has not been the Custodian at Record for Familiae Orientem, LLC."

On May 27, 2020, a member of Mr. Gilbert's office forwarded to SA Gates Certified Public Accountant documents that included 2018 tax documents for Familiae Orientem LLC, Renasant Bank statements for Familiae Orientem LLC account ending 2066 for January 2019 through July 2019, an Internal Revenue Service (IRS) document with an Employer Identification Number for Familiae Orientem, an Operating Agreement for Member-Managed Familiae Orientem LLC, an IRS notification that Familiae Orientem LLC will be treated as an S Corporation, and Limited Liability Company Articles of Organization for Wyoming for Familiae Orientem.

On or about May 29, 2020, law enforcement became aware that the Defendant Property was listed for sale. Shortly thereafter, law enforcement discovered that the Defendant Property was under contract for sale. Subsequently, law enforcement learned the closing date, originally scheduled for June 30, 2020, was moved up to June 29, 2020.

On May 29, 2020, Mr. Gilbert emailed SA Gates and indicated that the subpoena compliance was complete but that additional responsive materials would be provided if located.

On June 10, 2020, Mr. Gilbert emailed SA Gates Renasant Bank statements for Familiae Orientem LLC account ending 2066 from October 2018 through May 2020. No further documents have been received.

On June 22, 2020, the Government filed the complaint under seal, filed a motion to stay all proceedings aside from the filing of claims and answers under seal, and filed a lis pendens for the Defendant Property with the Madison County Chancery Clerk. Dkts. 3, 3-1, 4.

5

Beginning on June 23, 2020, the Government and Mr. Gilbert discussed ways to lift the lis pendens which would allow for the sale of the Defendant Property but would keep the pending civil forfeiture action in place.[3] The closing date for the Defendant Property was extended for one month.[4]

Beginning on June 24, 2020, the Government and Mr. Gilbert discussed whether the parties could reach an agreement on when the civil forfeiture action would proceed.

On July 13, 2020, the court granted the Government's *Ex Parte* Application to Partially Unseal Complaint for Forfeiture *In Rem* and the Government provided copies of the complaint and accompanying affidavit to counsel for potential claimant DIBIASE JR., Scott Gilbert, and to Kristen DiBiase, then unrepresented by counsel. The Government informed the Court that the Government sought to provide the complaint and accompanying affidavit to Claimants to facilitate the sale of the Defendant Property.

On July 15, 2020, the Government's Unopposed Motion for Protective Order was granted and a copy of the Agreed Protective Order was provided to Mr. Gilbert and to Kristen DiBiase. The order prohibited the distribution of the contents of the Verified Complaint *In Rem* and accompanying affidavit to parties beyond the potential Claimants and their counsel, and provided that any court filings referencing contents of the complaint and affidavit would be filed under seal.

On July 20, 2020, the Government inquired of Mr. Gilbert about the pending sale.

---

[3] All communications between counsel are in writing. The Government remains open to working out a way for the lis pendens to be lifted so that a sale can go forward while preserving the proceeds from a sale and the civil-forfeiture action. The Government's proposal includes placing the funds from the sale in a government-controlled escrow account so the funds would be preserved from dissipation.

[4] To some degree in this pleading, but more in the Memorandum in Support of Claimants' Joint Motion to Dismiss the Verified Complaint, Claimants make representations with which the Government disagrees in whole or in part. The Government only raises communications with counsel to the degree necessary to address the issues raised in this motion. Mr. Gilbert advised the Government on July 29, 2020 that Mr. Ray was Kristen DiBiase's attorney. At that time, Mr. Ray was copied on email communications.

On July 29, 2020, Mr. Gilbert informed the Government was informed the sale was cancelled and the property was again for sale. The Government informed Mr. Gilbert, and Mr. Ray, now retained for Kristen DiBiase, that there was a motion to stay under seal and, subsequently, that the Government was not comfortable disclosing all of the contents of the stay and order authorizing the stay. Mr. Gilbert indicated, with Mr. Ray copied, that until served with the order to stay, he intended to file an answer to the civil forfeiture complaint and that the Claimants will be proceeding with discovery.

On August 10, 2020, Kristin DiBiase's Answer to the Complaint and Theodore Marvin Dibiase Jr.'s Answer to the Complaint were filed.

On August 12, 2020, the Claimants' Joint Motion to Dismiss the Verified Complaint was filed.

## MOTION TO STAY

### I.     The Stay was Not Sought Ex Parte

The Claimants make two primary arguments why the stay in this matter is improper. First, the Claimants argue that the stay was obtained *ex parte* and that is not permitted under 18 U.S.C. § 981(g). The Claimants argument is factually inaccurate. The Government applied for the stay under seal, not *ex parte*, and informed both Claimants' attorneys on July 29, 2020. When the Government informed the Claimants' attorneys that the Government was not comfortable disclosing all contents of the under-seal filing, the Claimants indicated that they would proceed with answers and discovery until provided with a copy of the order. One avenue to address this was that the Claimants could apply to the Court for a redacted copy of the motion to stay or ask for that from the Government, but the Claimants chose to instead proceed as if no stay was in place at all. *See United States v. $177,844.68 in United States Currency and $296,746.66 in United*

*States Currency*, 2014 WL 4071054 (D. Nev. 2014) (the court ordered a redacted copy of the Government's motion for stay under seal be provided to claimants). The Government applied to provide a copy of the order and did so upon receiving court authorization.

## II.     A Motion to Stay Civil Forfeiture Proceedings Need Not Be Based on Harm Stemming from a Specific Discovery Request

The Claimants assert that a motion to stay can only be filed during active discovery in a civil forfeiture matter and that "the government must point to a specific discovery request or abuse that would satisfy the conditions of section 981(g)(1)." CM: 9. Neither of these assertions is accurate. The Claimants cite to *United States v. All Funds ($357,311.68) Contained in Northern Trust Bank*, 2004 WL 1834589 at *2 (N.D. Tex. 2004) (*hereinafter Northern Trust Bank*) for the proposition that the "stay [was] denied because [the] Government failed to point to any specific discovery request or abuse that had taken place." CM: 2. In *Northern Trust Bank*, there was an ongoing criminal investigation for close to three years prior to the government seizing funds in a bank account belonging to one claimant and a yacht belonging to a second claimant. 2004 WL 1834589, at *1. The government filed the *in rem* complaint against the seized items and a motion to stay the next day. *Id.* It appears that the government only argued broadly that civil discovery would be harmful but provided no facts. *Id.* at 2.

That showing of harm, however, can be established in the absence of a specific discovery request. In issuing its opinion, the court cited to *United States v. All Funds on Deposit in Business Money Market Account No. 028-942059-66*, 319 F.Supp.2d 290, 294 (E.D.N.Y. 2004) (*hereinafter* the "*Business Money Market*"). *Id.* In *Business Money Market*, the government pointed to no specific discovery request from the claimants, and the court there noted that "[t]he court is satisfied that information routinely ordered disclosed in civil matters would compromise the identity of

confidential information and cooperating witnesses. Under these circumstances, the court is required to stay this civil action. 18 U.S.C. § 981(g)(1)." 319 F.Supp.2d, at 294.

The court in *Northern Trust Bank* confirmed that the parties do not have to be engaged in discovery or point to a specific discovery request for a stay to be granted. Although "the Government fail[ed] to point to any specific discovery request or abuse that has taken place, and [made] no legitimate argument about the **prospective ability** of (claimants) to engage in discovery that could compromise its related criminal investigation" 2004 WL 1834589, at *2 (emphasis added), the court then discussed additional matters the government could have raised to support a stay, such as the fact that discovery could compromise the identity of cooperating witnesses or that claimants "might abuse the discovery process with overbroad discovery requests." *Id. Northern Trust Bank* did not hold that the government must point to a specific discovery request or a specific abuse to support a motion to stay civil forfeiture proceedings. It is clear from the decision that there are multiple avenues the government can use support a motion to stay. The court also did not question the filing of the motion to stay the day after the filing of the *in rem* complaint. In fact, the court's use of the language regarding **prospective ability** supports filing a motion to stay prior to commencement of discovery.

As a point of clarification, other courts have not required a "particularized showing of prejudice or particularized harm," but instead examine whether civil discovery will "interfere with the criminal investigation" and stays can be issued based on "likely prejudice." *United States v. One 2008 Audi R8 Coupe Quattro (Defendant) Commonwealth Euro Auto Group (Claimant)*, 866 F.Supp.2d 1180, 1183-1184 (C.D. Cal. 2011); *see also United States v. $1,026,781.61 in Funds from Florida Capital Bank*, 2009 WL 3458189, at *2 (N.D. Cal. Oct. 21, 2009) (court must only determine whether civil discovery will interfere with a criminal investigation), *United States v.*

*Approximately $69,577, in United States Currency*, 2009 WL 1404690, at *3 (N.D. Cal. May 19, 2009) (likely adverse impact on criminal prosecution is one factor for a stay of a civil forfeiture action).

### III. A Stay Can be Sought When a Complaint is Filed, and After Discovery Ends

The Claimants also argue that only after the filing of a claim and answer, as well as the filing of a motion for a more definitive claim under Rule G(5)(a) if any, can the government file a motion for a stay. CM: 9. This is so, they assert, because discovery cannot proceed until each of these steps occur. CM: 9. As noted in *Northern Trust Bank*, however, a motion for stay can be filed the day after an *in rem* complaint is filed and before any of these steps occur. 2004 WL 1834589, at *1.

Similarly, a motion for stay can be filed even after discovery is closed in a civil forfeiture matter. In *United States v. $4,480,466.16 in Funds Seized From Bank of America Account Ending in 2653, et al.*, 2019 WL 459645, at *1 (N.D. Tex. 2019)(*hereinafter Bank of America*), after claimants filed a summary judgment motion, the government moved to stay the civil forfeiture action due to "a related, ongoing criminal investigation." The court granted the motion because the information that may be disclosed in summary judgment motions could be as broad as civil discovery. *Id.* at 3. The court relied on *United States v. $144,210.77 in Funds Seized from Suntrust Bank Account XXX-XX-XXXX*, 63 F.Supp.3d 1387, 1391 (N.D. Ga. 2014) ("'The scope of civil discovery is inherently broad and there are significant perils associated with allowing civil discovery in light of parallel criminal prosecution or investigation.'"). *Id.* The court noted that the current version of 18 U.S.C. §981(g)(1) reflects an expansion which " 'broadened the stay relief significantly.'" *Id.* at 2 (quoting *United States v. All Funds Deposited in Account No. 20008524845*, 162 F.Supp.2d 1325, 1330 (D. Wyo. 2001)).

## IV. The Government Satisfied its Burden Justifying the Stay and Claimant DIBIASE JR.'s Ongoing Actions are Consistent with the Need for a Stay

To the extent deemed relevant, DIBIASE JR's actions that began before the Government sought its stay have continued.[5] DIBIASE JR. was alerted that federal authorities were examining his activities no later than April 10, 2020, when they approached him. When federal law enforcement spoke to Scott Elliott on April 24, 2020, Elliott, to his credit, revealed that he was nothing more than a nominee owner for Familiae Orientem LLC. Based on the investigation to date, Familiae Orientem LLC appears to be a company with no employees that does no real business. This is an organization that was created in Wyoming the day before a $1,000,000.00 contract was signed by DIBIASE JR. with Family Resource Center of Northern Mississippi (FRC) in Mississippi.

Then, twelve days later, May 4, 2020, the Audit came out which publicly named Familiae Orientem LLC and its $1,000,000.00 contract, where $700,000.00 was paid, because the contract was not completed. It is alleged that at least $365,303.23 of the $700,000 was used to purchase the Defendant Property. Dkt. 3-1 at 6-7. Specifically, $365,303.23 of the $401,304.37 down payment on the Defendant Property came from this contract. Dkt. 3-1 at 7. The very next day, May 5, 2020, the Claimants started dissipating the tainted asset, the Defendant Property, by putting it up for sale.

On May 6, 2020, a grand jury subpoena was issued for Familiae Orientem LLC. It initially went to the nominee owner, Scott Elliott, who was still listed with the State of Mississippi as the only member. When the grand-jury subpoena arrived at Mr. Gilbert's office for DIBIASE JR., the

---

[5] When the Claimants were advised of the stay and the Government's reservations disclosing the document as filed, the Claimants could have sought relief from the Court for that document or asked for a redacted version.

Defendant Property, unknown to law enforcement, was under contract for sale. What follows was an apparent campaign by DIBIASE JR., the custodian of records, to hide documents that are relevant to the $1,000,000 contract and the Defendant Property.

The subpoena requires disclosure of multiple items. The Government reasonably believes that DIBIASE JR. has these items under his control. For example, the subpoena requires copies of any contracts that Familiae Orientem LLC had with the Family Resource Center of Northern Mississippi (FRC) from January 1, 2016 to present. Attachment 1. This was not provided despite the fact that it was referenced in the Audit and that it was the only contract that Familiae Orientem LLC had with FRC.[6] It was not disclosed in response to the Grand Jury subpoena even after DIBIASE JR. was provided with the affidavit accompanying the civil forfeiture complaint that specifically referenced it. *Id.*

The subpoena also requires disclosure of bank account information. DIBIASE JR. provided bank account information for the Familiae Orientem LLC account at Renasant Bank ending 2066 for October 2018 through June 2020. The subpoena called for all bank account information from January 1, 2016-present. Attachment 1.

DIBIASE JR. did not provide the Government with any bank information for Familiae Orientem LLC's account ending 2604 at Bank Plus that was opened on August 8, 2018. Dkt. 3-1 at 8. DIBIASE JR. was the sole signer on the account and appears to be the sole person who had access to the account while it was open. *Id.* All payment on the contract, two FRC checks for $350,000.00, were deposited into the Bank Plus account ending 2604 in August 2018. *Id.* This money, minus some expenditures, was used to fund Renasant Bank account ending 2066. *Id.* at

---

[6] It appears to be the only contract that Familiae Orientem LLC had from any source, ever.

12

10. Money from that account was later transferred into a bank account the Claimants used to make the down payment on the Defendant Property. *Id.* at 10. Without the Bank Plus records, however, this connection and tracing of the FRC payments on the contracts would not be possible. It therefore appears that DIBIASE JR. sought to prevent federal law enforcement from making connections to the federal funds before the sale of the Defendant Property was completed. These records also were not provided even after DIBIASE JR. was provided with the affidavit accompanying the civil forfeiture complaint that specifically referenced it.

The grand-jury subpoena requires disclosure of board member and employee compensation which are both relevant to completion of the contract and compensation paid to DIBIASE JR. and others. Attachment 1. Again, this was never received.

In summary, DIBIASE JR. became aware no later than April 10, 2020, that federal law enforcement wanted to speak to him about DAVIS, MDHS, and the third-party contractors. Two weeks later, DIBIASE JR. was contacted by Scott Elliott, who had potentially damaging information against DIBIASE JR., because federal law enforcement was there to speak with him. Eleven days after that the Audit publicly named Familiae Orientem LLC and the only contract it had with FRC. The next day the Claimants began dissipating the tainted asset, the Defendant Property. When the Government sought information about Familiae Orientem LLC, DIBIASE JR. inexplicably excluded required information, including records, relevant to the tainted asset. This behavior continued even after DIBIASE JR. was provided with the affidavit accompanying the verified complaint. Based on these actions alone, the Court should not permit DIBIASE JR. to engage in civil discovery, or, indeed, to litigate the civil forfeiture matter, while the Government is conducting an ongoing investigation.

## PARTIAL LIFTING OF THE STAY

The Claimants argue that a motion to dismiss should be exempt from the plain language of the stay issued in this case. CM: 6. The Order Staying Case and Extending Time for Notice indicates that only the filing of claims and answers will occur until the criminal case is completed. The Claimants' theory is that a motion to dismiss a civil forfeiture case is different from other substantive motions for two reasons. First, the Claimants argue a motion to dismiss should be permitted in a civil forfeiture case because there are different pleading requirements in civil forfeiture cases than other civil cases.[7] CM: 5. Although the pleading requirements vary, imposing the terms of a stay does not equate to an attempt to avoid the pleading requirements under the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G Forfeiture Actions in Rem (Rule G). The Claimants cite no rules or cases that support their position.

When a stay is authorized, all motions, including motions to dismiss, are suspended. For example, in *Bank of America*, the claimants filed motions to dismiss[8] the government's third amended complaint and motions for summary judgment in a civil forfeiture matter. 2019 WL 459645, at *1. The government filed a motion for a stay that the court granted. *Id.* at 2. The court then denied as moot or terminated all other pending motions in the case. *Id.* at 1. In *United States v. $1,730,010.00 in United States Currency More or Less, and 1996 Kenworth T600 Tractor Vin# 1XKAD69X2TR681066*, 2007 WL 1164104, at *1, 3 (W.D. Tex. 2007), the court granted a motion

---

[7] *United States v. $8,221.877.16 in United States Currency*, 330 F.3d 141, 154 (3d. Cir. 2003) referenced the seizure of property and not interference as noted by the Claimants. CM: 5. A lis pendens is a notice document and not a seizure. Further, *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 638 (1st. Cir. 1988) cited by Claimants discussed a different pleading statute than that currently used for civil forfeiture actions. CM: 5.

[8] The opinion did not specify, but based on the context it was likely a motion to dismiss based on alleged failures to comply with Rule G (2).

14

to stay a civil forfeiture matter including a pending motion to dismiss alleging failure to comply with Rule G(2).

Second, the Claimants argue a motion to dismiss is different because the motion is limited to the "four corners of the complaint." CM:10. This argument ignores two key points. First, although the Claimants do discuss the contents of the complaint in the motion, a significant portion of the motion is focused on a request that the dismissal be with prejudice and addresses matters entirely outside the "four corners" of the complaint. The Government has already noted its position on the extraneous arguments in footnote 2.

Third, a response to the Claimants' Joint Motion to Dismiss the Verified Complaint does not serve merely to elicit a responsive filing from the Government. Under Rule G(6)(a), "if a claimant serves a motion to dismiss the action, the government must serve the interrogatories within 21 days after the motion is served." These interrogatories are, however, limited in nature. *Id.* Under normal circumstances, the Government can serve special interrogatories from the time the claim is filed until discovery is closed. *Id.* The interrogatories further require answers or objections from any claimants that are served. Thus, the motion can result in other substantive actions in a civil forfeiture case.

## CONCLUSION

For all of these reasons, the United States of America respectfully requests that the Court deny the Claimants' motion.

Dated: Friday, September 18, 2020

                          Respectfully submitted,

                          Deborah Connor, Chief
                          Money Laundering and Asset Recovery Section
                          Criminal Division
                          U.S. Department of Justice

By: _[signature] for_
                          Kerry Blackburn
                          Oklahoma Bar (22918)
                          Trial Attorney
                          Money Laundering and Asset Recovery Section
                          Criminal Division
                          U.S. Department of Justice
                          Kerry.Blackburn2@usdoj.gov

## CERTIFICATE OF SERVICE

I, Kerry Blackburn, hereby certify that a filed copy of this motion will be provided to counsel for Theodore Marvin DiBiase Jr., Scott Gilbert, and Kristen DiBiase, Mark Ray, via email.

*[signature] for*
Kerry Blackburn