

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                                PLAINTIFF

v.                                              CIVIL ACTION NO. 3:20CV415-DPJ-FKB

THE REAL PROPERTY KNOWN AS
115 ROSEDOWN BEND
MADISON, MISSISSIPPI 39110                              DEFENDANT PROPERTY

**REPLY BRIEF RE: CLAIMANTS' JOINT MOTION TO LIFT THE STAY**

**I.      The Court should order the stay dissolved in its entirety.**

This Court will seek to resolve this motion on the narrowest ground possible. In this case

the narrowest ground is a finding that the government did not comply with the plain language of

section 981(g) when it sought a stay of this case *ex parte,* contemporaneously with seeking a

motion to seal the case. As such, the Court need not determine at this juncture whether the

government has met its burden of showing "that civil discovery will adversely affect the ability

of the Government to conduct a related criminal investigation or the prosecution of a related

criminal case." 18 U.S.C. § 981(g)(1). Because the current stay order was obtained outside the

parameters of section 981(g), it is invalid and should be dissolved, leaving the government free

to submit a new motion to stay the case in compliance with section 981(g).

The government's characterization of the holding in *Northern Trust Bank* as having

"confirmed that the parties do not have to be engaged in discovery or to point to a specific

discovery request for a stay to be granted" is not an accurate reflection of the holding. Response

at 9. The language cited in the government's response, that "the government … makes no

legitimate argument about the prospective ability of [claimants] to engage in discovery that could

compromise its related criminal investigation" means that despite the government's efforts to

convince the court to the contrary, the prospective ability of claimants to seek some type of

discovery related to the criminal case is not a "legitimate argument" that will justify a stay.

Response at 9, *Northern Trust Bank,* 2004 WL 1834589, *2. The meaning of this passage is clear

when read in context with the other words it is surrounded by.

> [T]he Government's arguments do nothing more than speculate
> about how civil discovery will adversely affect its criminal
> investigation. Under either of the Government's theories, *every* civil
> forfeiture case with a related criminal investigation is entitled to a
> stay. Such speculative and conclusory theories undercut the
> requirement of section 981(g) *that the Government actually show
> that civil discovery will adversely affect its ability to conduct the
> criminal investigation.* There is no presumption that civil discovery,
> in itself, automatically creates an adverse affect on the government's
> related criminal proceeding. On the contrary, the Government must
> make an actual showing regarding the anticipated adverse affect.

*Id.* (emphasis in original).

Similarly, the government's argument that *Northern Trust Bank* stands for the proposition

that "a motion to stay can be filed the day after an *in rem* complaint is filed" is not based on a

reasonable reading of that case.  Response at 10. The court in *Northern Trust Bank* denied the

motion to stay because the government failed to do anything other than make generalized

allegations about the possible effect civil discovery could have on a related criminal

investigation. *United States v. All Funds ($357,311.68) Contained in Northern Trust Bank,* 2004

WL 1834589, *2 (N.D. Tex. 2004). The only reasonable conclusion that can be drawn from that

holding is that the government's motion for a stay was premature. "Such speculative and

conclusory theories undercut the requirement of section 981(g) … [and] the Government fails to

point to *any specific discovery request or abuse that has taken place*" *Id.* The government's

reasoning on this point strains credulity.

The government's citations to cases that reflect the differing approaches to motions to stay further undercut its argument. Each of the cases cited by the government appear to reflect that the claimant had an opportunity to come into court and contest the government's request for a stay. None of the cases cited include any analysis of the propriety of the government's approach of seeking a stay entirely *ex parte,* before it had actually initiated the lawsuit by serving the defendant property and claimant's with a copy of the complaint, as required by 18 U.S.C. § 985. Moreover, the cases cited by the government all come from district courts outside the Fifth Circuit, where the case cited by claimants, *Northern Trust Bank,* is from the Northern District of Texas.

The holdings in the cases cited by the government appear to directly conflict with the plain language of section 981(g), and the cannons of statutory interpretation. *See* Joint Motion to Lift Stay at 7-8. Conversely, the holding in *Northern Trust Bank,* is congruent with both the text of section 981(g) and the cannons, and is still good law, having been cited recently for its holding in *United States v. Real Property Located at 18202 Girasole, San Antonio, Bexar County, Texas,* 2017 WL 11207330 (W.D. Tex. June 1, 2017) and in *United States v. $4,480,466.16 in Funds Seized from Bank of America Account Ending in 2653,* 2019 WL 459645 (N.D. Tex. Feb 6, 2019).

## II.     Alternatively, the Court should order a partial lifting of the stay and adjudicate the motion to dismiss.

If the Court determines that the government's procedure complied with the plain language of the statute, then the next narrowest ground available to the Court is a finding that adjudicating the motion to dismiss does not implicate the taking of discovery in such a manner that would "adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." 18 U.S.C. § 981(g)(1).  The

arguments raised by the government fail to explain how an order partially lifting the stay for the

purpose of adjudicating the motion to dismiss would in any way implicate its justification for

seeking a stay of the proceedings in the first place. The government does not challenge the fact

that adjudication of the motion to dismiss is limited to the information contained within the

complaint. Response at 15. Instead, the government argues that seeking a dismissal with

prejudice somehow changes this limitation. Response at 15. This argument demonstrates a

fundamental misunderstanding of federal civil practice. All motions to dismiss brought pursuant

to Federal Rule of Civil Procedure 12 are normally determined based solely on the content of the

pleadings.[1] The same is true in civil forfeiture cases.[2] In every case that a motion to dismiss for

failure to sufficiently plead is granted, the court must determine whether the dismissal is with or

without prejudice. That matter is separate and distinct from the court's substantive ruling on the

sufficiency of the pleading. The government's argument that this aspect of adjudicating a motion

to dismiss for failing to sufficiently plead the cause of action somehow requires the court to

determine the motion on matters outside the "four corners" of the complaint is nonsensical and is

offered without authority.

---

[1] In determining whether to grant a Federal Rule 12(b)(6) motion, district courts primarily consider the allegations in the complaint. The court can, however consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011) (incorporation of matters outside complaint by judicial notice did not convert motion to summary judgment when no facts were in dispute and matters were in public record). These matters are deemed to be a part of every complaint by implication.

[2] *See United States v. Sum of 70,990,605,* 4 F.Supp.3d 189, 195-96 n.2 (D.D.C. 2014) (in ruling on a motion to dismiss, the court will not consider matters outside the pleadings); *see also United States v. Real Property ... 983 Richeon Ave.,* 234 F.Supp.2d 1136, 1137 (C.D. Cal. 2002) (court may consider exhibits submitted with the complaint and matters that may be judicially noticed); *United States v. Funds in the Amount of $29,266,* 96 F.Supp.2d 806, 809 (N.D. Ill. 2000) (on motion to dismiss, plaintiff's allegations assumed to be true; evidence outside the pleadings rebutting allegation in the complaint will not be considered unless motion is converted into a motion for summary judgment).

The government's second argument, that it is required to engage in discovery by serving special interrogatories as a result of the filing of a motion to dismiss, is wrong. Response at 15. This argument demonstrates yet another fundamental misunderstanding about how the rules of procedure in civil forfeiture cases work. Propounding special interrogatories is not mandatory. The government is permitted to investigate whether a claimant has standing to contest a forfeiture before it is required to respond to a motion to dismiss. The government may do that by propounding special interrogatories to the claimant. *See* Rule G(6) of the Supplemental Rules for Admiralty and Maritime Claims and Civil Forfeiture Actions. Special interrogatories are "limited to the claimant's identity and relationship to the defendant property." Rule G(6)(a) of the Supplemental Rules for Admiralty and Maritime Claims and Civil Forfeiture Actions. Just as with any discovery device, the government must act in good faith and only seek discovery that is "proportional to the needs of the case." Federal Rule of Civil Procedure 26(b)(1). One of the key factors in determining proportionality is the "importance of the discovery in resolving the issues." *Id.*

Rule G(8)(b)(i) provides that a claimant who establishes standing to contest a forfeiture action may move to dismiss the complaint. To establish standing within the meaning of the rule, a claimant must show both that he has complied with the pleading requirements in Rule G(5)(a) and (b) – *i.e.,* that he has "statutory standing;" and that he has a genuine interest in the defendant property – *i.e.,* that he has "Article III standing." *See United States v. $487,825.00,* 484 F.3d 662, 664 (3d Cir. 2007) ("In order to stand before a court and contest a forfeiture, a claimant must meet both Article III and statutory standing requirements"); *United States v. $541,395.06 in U.S. Currency,* 2012 WL 3614294 (W.D.N.Y. Aug. 21, 2012) (explaining that Article III standing relates to the claimant's interest in the defendant property, while statutory standing

relates to the claimant's compliance with the pleading requirements imposed by Congress) (citing *Asset Forfeiture Law in the United States*, § 9-4 (2007)).

Here, Claimants have filed timely claims and answers in accordance with Rule G(5)(a) and (b) and thus have statutory standing. *See United States v. Funds in the Amount of $239,400*, 795 F.3d 639 (7th Cir. 2015) (to establish statutory standing, the claimant need only satisfy the pleading requirement in Rule G(5)). Further, they have demonstrated through their respective Verified Claims that they are the titled owners of the Defendant Property. The titled owner of real property has a legal interest in the property sufficient to satisfy the constitutional standing requirements in Article III. *See United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003) (titled owner of a vehicle has standing); *United States v. Real Property . . . 246 Main Street*, 2015 WL 4254381 (M.D. Fla. July 13, 2015) (bare legal title to real property is sufficient for Article III standing even if the claimant does not exercise dominion and control).

The Government has never suggested that Claimants are nominees or that they do not exercise dominion and control over the Defendant Property, nor would there be any basis for such a suggestion. In fact, the government has conceded the factual basis necessary to conclusively establish that the claimants have Article III standing. *See* Complaint, Dkt. # 3-1, ¶¶ 14-22. Because the sole purpose for propounding special interrogatories is to permit the government to challenge a claimant's standing to contest the forfeiture, it is impossible for the government to construct a special interrogatory that would have any "importance" in determining what the government has already factually conceded, i.e. that the claimants have standing to contest the forfeiture. As such, the government cannot justify propounding special interrogatories when it has no reason to question the standing of the claimants.

Accordingly, the government has failed to make any showing that a partial lifting of the stay would in any way implicate discovery. The government has failed to come forward with any proof that adjudicating the motion to dismiss would "adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." 18 U.S.C. § 981(g)(1). This Court should grant a partial lifting of the stay and adjudicate the motion to dismiss on its merits.

**III.      The government's factual assertions are inaccurate and do not justify a stay.**

The government suggests that the Court should leave the stay in place because it believes that Mr. DiBiase is engaged in a "campaign ... to hide documents that are relevant to the $1,000,000 contract and the Defendant Property." Response at 12. Putting aside the fact that this allegation is unfounded and that the government has offered no actual proof that Mr. DiBiase is in possession of any "hidden" documents, this argument would tend to militate in favor of conducting discovery as opposed to preventing it.  If the government believed that Mr. DiBiase was withholding evidence, it would make sense to engage him in discovery in a proceeding where he has voluntary intervened.[3] Regardless of the efficacy of the government's apparent strategy in this case, from a legal perspective, the government's suggestion is baseless, as the issue of whether Mr. DiBiase has fully complied with the demands of a grand jury subpoena issued in a criminal investigation has no effect on whether engaging in discovery in this case will "adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." 18 U.S.C. § 981(g)(1).

---

[3] It would make even more sense for the government to obtain a show cause order from the court in reference to the grand jury subpoena and compel Mr. DiBiase to come into court to address the government's apparent certainty that Mr. DiBiase is hiding responsive documents. Of course, if the government were to do that, it would have to come forward with some basis for the allegation which, other than rank speculation, it apparently cannot.

7

The government's suggestion that Mr. DiBiase is hiding documents appear to be based, at least in part, on several faulty assumptions made by counsel for the government. One of the more cavalier examples of the government's baseless assumptions is the allegation that Mr. DiBiase is hiding certain BankPlus records. As turnabout is said to be "fair play," the undersigned will join the government in engaging in rank speculation for a moment. Perhaps the truth is that Mr. DiBiase is like most other normal people and he does not meticulously collect and maintain bank records from an account that was only open for a few months, and that was closed several years ago. What is not speculation is that Claimant's CPA did not have copies of the BankPlus records either.[4] What is also not speculative is that the FBI has never reached out to the undersigned and questioned why the documents described in the government's response have not been produced. If the government had any reason to believe responsive records were missing, a simple inquiry by the FBI asking whether the records had been intentionally withheld for a legal reason, such as a privilege, or whether Mr. DiBiase did not have them, would have been prudent. The lack of any effort by the criminal prosecution team to pursue this issue on their own is telling.[5]

Another imaginative, yet incorrect, theory offered by the government is that there is something inherently suspicious about an LLC that is associated with a single contract or project. Apparently, counsel for the government is unaware of the nature of an LLC, what its purpose is, and how that type of business entity is routinely used. This Court, on the other hand, is well aware of the ubiquity of LLCs, that the single purpose of an LLC is to provide protection for the

---

[4] The email the undersigned sent to Mr. DiBiase's CPA requesting all bank records associated with Familiae Orientum is attached as Ex. H. The request to the CPA matched the language from the grand jury subpoena. Everything that was received from the CPA was produced in response to the subpoena. Of course, the government is aware of the identity of Mr. DiBiase's CPA because federal agents interviewed him and served him with a grand jury subpoena for the same records.
[5] Despite the fact that the government already has the BankPlus records, Claimants have now gone to the bank and obtained those records. The records will be produced once the undersigned has an opportunity to review them, Bates number them and provide them.

personal assets of its members in the event the activity of the LLC gives rise to liability, and that

it is common for individuals to utilize separate LLCs for individual projects, contracts and

business ventures. There is simply nothing suspicious about the formation of an LLC for the

purpose of entering into a personal services contract. It happens literally hundreds of times a day.

Another example of the government's misunderstanding of what an LLC is comes in its

assertion that Familiae Orientum "appears to be a company with no employees that does no real

business." Response at 11. The government appears to believe that all LLCs should have "brick

and mortar" locations, have employees with payroll records and that an LLC should do "real

business." LLCs are regularly used by individuals for things like buying a single vehicle or

managing fixed assets and investment properties. It is common for hunting clubs (deer camps) to

form LLCs to protect their members from individual liability.[6] The notion that the creation of an

LLC to contract with the government is somehow indicative of criminal intent is simply not

reflective of reality.

The same is true of the allegation that Mr. DiBiase has withheld records of the identity of

"board members and employee compensation." Response at 13. Familiae Orientum has no board,

and it has no employees, other than perhaps Mr. DiBiase. The government fails to explain why it

would expect an LLC of this nature to have a board of directors or employees. Given the

extremely diverse and widespread use of LLCs, it is a certainty that most LLCs will not have a

board of directors or non-member employees. Mr. DiBiase, along with his CPA, have produced

Familiae Orientum's income tax returns pursuant to the subpoena. Claimants' CPA has also

produced copies of Claimant's individual income tax returns to the FBI. Had counsel for the

---

[6] A cursory search of Mississippi's Secretary of State business records reveals that a significant number of deer hunters in Mississippi understand the utility of using an LLC for entities that "[do] no real business." This is a notion that is apparently foreign to the lawyers for the government.

government bothered to review these documents, she would be aware that all the compensation paid by the LLC to any individual is disclosed in those returns. Had the LLC incurred the expense of paying employees, the return would have included that expense. The tax return also identifies Mr. DiBiase as being the 99% owner of the LLC. The same is true for the Mississippi Secretary of State business records, which identify both Mr. Elliott and Mr. DiBiase as members of the LLC. *See* Application for Reinstatement of Familiae Orientum, LLC, attached as Ex. A. The government's cavalier allegations are all fiction, without any fact.

The government's claim that Mr. DiBiase is withholding the contract between Familiae Orientum and Family Resource Center of North Mississippi is disingenuous at best. The undersigned told federal agents when he met with them on May 8th, 2020 that Mr. DiBiase had not been able to locate several of the contracts that were referenced in the Audit report. In fact, the undersigned asked the agents to share copies of the contracts they had. Based on the portions of the Audit report referenced in the complaint, and the allegations in the complaint, the government must have an authentic copy of this contract in its possession.

The government's representation that Claimants suddenly decided to "dissipate the asset" by listing their house for sale as a result of the release of the Audit report is particularly troubling. The government has interviewed the realtor that listed the claimants' home for sale. The government is aware that the claimants plan to sell their home was in the works as early as October 2019. This is quite some time before the public disclosure of the audit report by the Auditor's Office on May 4, 2020, before the FBI began its investigation on February 12, 2020, and before the state court indictments were returned on February 4, 2020. *See* Complaint Dkt. #3-1 at 3. It was certainly well before Mr. DiBiase was approached by the FBI.

The overall tenor of the government's "Procedural and Factual History" creates a narrative that the government has been transparent and forthcoming throughout this litigation. Nothing could be further from the truth. The government has attempted to prevent the claimants from coming into court and defending their ownership of the defendant property from the outset. The government's argument that it sought and obtained the stay under seal and not *ex parte* is puzzling. The order to seal the case was sought and obtained contemporaneously with the stay. There is no dispute that the government obtained the stay without serving a copy of the motion for a stay on the claimants and without providing an opportunity for the claimants to contest the motion. Such conduct is *ex parte* by definition.

The government concedes in its response that at the time it filed the complaint it was aware of the identity of Mr. DiBiase's counsel, and that the FBI had an open dialogue with the undersigned. Response at 2, 4, 5. The government also concedes that it was aware that it was directly interfering with the ability of the claimants to alienate the defendant property when it filed the complaint. Response at 5. In spite of having this information, the government moved surreptitiously to file its forfeiture complaint, and to enroll a *lis pendens* in the chain of title of the defendant property to prevent its sale. The government did so despite the fact that it knew the court did not have subject matter jurisdiction over the defendant property at the time it issued its *lis pendens* because the government had not complied with all of the statutory requirements to initiate the civil forfeiture action. *See* Joint Motion to Lift Stay at 3, *see also* 18 U.S.C. § 985(c)(1).

The truth is the government had no intention of providing a copy of the complaint to the claimants or providing any notice regarding the existence of the stay. In fact, on June 23, 2020, counsel for the government refused to provide the undersigned with a copy of the complaint. *See*

email attached as Ex. B.  The government did not agree to provide claimants with a copy of the complaint until July 7, 2020. *See* email attached as Ex. C. The government only agreed to do so after the undersigned confronted counsel for the government with the fact that the district court lacked subject matter jurisdiction over the defendant property until the government fully instituted the lawsuit, which according to the federal forfeiture law, required serving the property and the owners/claimants with a copy of the complaint. *See* Ex. C. The failure to fully institute the lawsuit also made the *lis pendens* invalid. *See Mize v. Westbrook Const. Co. of Oxford, LLC,* 146 So. 3d 344, 349 (Miss. 2014) *(citing Dethlefs v. Beau Maison Dev. Corp.,* 511 So.2d 112, 117 (Miss.1987); *see also Ryals v. Douglas*, 205 Miss. 695, 39 So. 2d 311 (1949); *Edwards v. Bridgetown Cmty. Ass'n, Inc.*, 486 So. 2d 1235, 1239 (Miss. 1986) ("As long ago as 1851, in the case of *Bacon v. Gardner*, 23 Miss. 60 (1851), this Court held that the issuance of a summons was necessary in order to constitute the lis pendens.").

Counsel for the government did not disclose the existence of the stay order until July 29, 2020, after the undersigned served her with copies of the claimants' respective verified claims. *See* email attached as Ex. D. After learning about the purported stay, the undersigned requested a copy of the motion for the stay and the order granting the stay. *See* email attached as Ex. E. On July 30, 2020, in what was becoming a consistent refrain, counsel for the government refused to provide a copy of the motion or the order, purportedly because those documents "contain[ed] information that should not be made available at [that] time."[7] *See* email attached as Ex. F. The undersigned informed government counsel that unless a copy of the order staying the case was provided, the claimants intended to proceed with discovery. *See* email attached as Ex. G. The undersigned also stated that if an order to stay was produced, the claimants would move to have

---

[7] Having now received the order, it is obvious there is nothing in that order other than standard language granting a stay. No case specific information is present in the order.

12

the stay lifted. *See* Ex. G. Consistent with these emails, Claimants have not propounded discovery because of the existing stay order but are instead seeking to have the stay lifted.

It is readily apparent from the paucity of evidence in the complaint, and from the manner in which the government has approached this matter, that counsel for the government has concluded that there is not sufficient evidence to obtain a seizure warrant for the proceeds of the sale of the defendant property. For a variety of reasons, the government would be in significantly better position if it had not filed a civil forfeiture action and enrolled the *lis pendens*.[8] The government concedes it was aware of the closing date of the sale of the defendant property. Response at 5. If the government could have obtained an anticipatory seizure warrant for the proceeds of the sale, it surely would have done so, and served the warrant at the time of the closing, seizing the funds. Obviously, the government does not believe it has enough evidence to convince a magistrate judge to issue a seizure warrant for the money, or it would moot this litigation by voluntarily dismissing the action without prejudice, permitting the sale to be completed and then serving the seizure warrant at the time of the closing.

This is important because the government has offered to remove the *lis pendens* to permit the sale to go through, so long as the claimants to agree to voluntarily turn over the proceeds of the sale to be held by the government indefinitely. *See* email Ex. C. The government is attempting to leverage the *lis pendens* and the restraint it has placed on the claimants' home to coerce the claimants to surrender funds it cannot otherwise legally obtain. The undersigned has been clear with counsel for the government from the outset that Claimants will not voluntarily

---

[8] The most obvious reason is that the government incurs no expense from holding money in its seized asset deposit fund. Conversely, forfeiting real property requires the government to incur significant maintenance and upkeep expenses until the property can be sold. Government sales of real property regularly bring prices well below fair market value. Because of the highly leveraged nature of the defendant property, the government stands to lose money if it has to forfeit, maintain and sell the DiBiase house itself.

turn over the proceeds of the sale of their home until such time as the government is willing to share evidence that is sufficient to establish probable cause that the money used to buy the home was the proceeds of a crime. The government has refused to disclose any such proof and they certainly did not include it in the complaint. This method of holding Claimants' home hostage, while attempting to circumvent the requirement that probable cause must exist before property can be seized or restrained, can only be successfully carried out with the stay that is currently in place.

**CONCLUSION**

The government is using the sealed, stayed civil forfeiture action as a sword and a shield at the same time. The government has made every effort to prevent and delay the claimants' efforts to come into court to litigate their ownership rights in the defendant property. If the government had any confidence in its ability to defend the legal sufficiency of its complaint it would voluntarily do so. Instead, the government has failed to comply with the law at each phase of this case, beginning with enrolling a *lis pendens* without initiating the action in compliance with section 985, by seeking a stay of this matter *ex parte*, and by attempting to leverage the restraint on the claimants' home into a voluntary surrender of money that the government cannot sufficiently link to a crime. This Court should declare the stay void, or in the alternative order a

partial lifting of the stay. Either way, the government should be ordered to respond to the

claimants' motion to dismiss.

Respectfully submitted, this the 6th day of October 2020.

THEODORE MARVIN DIBIASE, JR.
CLAIMANT

By: _____
        J. Scott Gilbert
        Counsel for the Claimant

KRISTEN DIBIASE
CLAIMANT

By: _____
        Mark D. Ray
        Counsel for the Claimant

OF COUNSEL:

J. Scott Gilbert, Esq. (MS Bar No. 102123)
WATKINS & EAGER PLLC
P.O. Box 650 Jackson, MS 39205-0650
Telephone: 601-965-1900
Facsimile: 601-965-1901
sgilbert@watkinseager.com

COUNSEL FOR THEODORE MARVIN DIBIASE, JR.

Mark D. Ray, Esq. (MS Bar No. 4652)
3352 Hwy 18, Brandon MS 39042
Telephone: 601-497-2887
markdannelray@gmail.com

COUNSEL FOR KRISTEN DIBIASE

## CERTIFICATE OF SERVICE

I, the undersigned counsel for the claimant, have caused this pleading to be served on all interested parties via email to:

Kerry Blackburn
Kerry.Blackburn2@usdoj.gov

Dave Fulcher
Dave.Fulcher@usdoj.gov

This the 6th day of October 2020.

By:   J. Scott Gilbert