

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

FEB 1 0 2021

ARTHUR JOHNSTON
BY_____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

**v.**                                         **CIVIL ACTION NO. 3:20-cv-415-DPJ-FKB**

**REAL PROPERTY KNOWN AS
115 ROSEDOWNE BEND, MADISON,
MISSISSIPPI 39110**                                **DEFENDANT PROPERTY**

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF
GOVERNMENT'S RESPONSE IN OPPOSITION TO CLAIMANTS' JOINT
<u>MOTION TO DISMISS THE VERIFIED COMPLAINT</u>**

The Court should deny the Claimants' Joint Motion to Dismiss the Verified Complaint for forfeiture *in rem* because the Verified Complaint for Forfeiture *in Rem* (Complaint) sufficiently meets the *reasonable belief* standard, as required by Rule G(2)(f).  Complaint, Docs. 3, 3-1.[1]

**I.      FACTUAL SUMMARY**

The civil forfeiture action alleges that the real property known as 115 Rosedowne Bend, Madison, Mississippi 39110 (Defendant Property), based on violation of 18 U.S.C. § 666(a)(1)(A), is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) and that based on violations of 18 U.S.C. §§ 1956 and 1957, the Defendant Property is subject to forfeiture under § 18 U.S.C. § 981(a)(1)(D).  Specifically, Mississippi non-profits receive Federal grants and other assistance funds to help needy individuals in Mississippi.  A non-profit may then sub-grant the Federal funds to other organizations to carry out these missions.  One Theodore Marvin DiBiase Jr. (DiBiase Jr.) company, Priceless Ventures LLC, entered into a contract with one of these non-profit organizations, Federal Resource Center of Northern Mississippi (FRC), in May 2018, while a second DiBiase Jr. company, Familiae Orientem LLC, entered into another such contract

---

[1] Doc. 3-1 is Exhibit A of the Complaint which consists of the Affidavit of Task Force Officer George Collins.

in June 2018.  The contract that DiBiase Jr. signed in June 2018 required his organization, Familiae Orientem LLC, to complete a specified number of delineated tasked in support of the RISE[2] program between the dates of June 25, 2018 and July 24, 2019.  In return, Familiae Orientem LLC would earn $1,000,000.  Instead, no work was completed on either contract.  On the RISE contract, DiBiase Jr. held one meeting and completed no other work according to FRC.

FRC issued two $350,000 checks to Familiae Orientem LLC during the first two months of the contract.  DiBiase deposited that money into an initial Familiae Orientem LLC bank account where it was commingled with other funds before it was moved to another Familiae Orientem LLC bank account.  Then, DiBiase moved $401,304.37 out of that account and into his personal account that he shared with his wife, Claimant Kristen DiBiase.  The same day he sent those funds by wire transfer to an attorney for the down payment on the Defendant Property. Multiple factors show that DiBiase's actions were designed to conceal the true nature and source of the funds used to purchase the Defendant Property.

## II.    SUMMARY OF PROCEDURAL HISTORY

On June 22, 2020, the Government filed: the instant Verified Complaint for Forfeiture *in Rem*, Doc. 3; a motion to seal the case, Doc. 1; and motion to stay the case, Doc. 4.  Orders granting the motions followed.  Docs. 2, 4.  On July 14, 2020, the Government filed a motion to partially unseal the Complaint so that DiBiase Jr., his counsel, and Kristen DiBiase, then unrepresented, could have full copies of the Complaint.  Doc. 6.  An order granting the motion was signed the same day, Doc. 7, and the Government then filed for a protective order as to those documents which was agreed to by counsel for DiBiase Jr. and Kristen DiBiase, Doc. 9.  The

---

[2] The RISE program is not otherwise defined in the contract that DiBiase Jr. signed and it is unclear if RISE is an acronym.

protective order was signed on July 15, 2020.  Doc. 10.  The Order requires that any filed documents that reference the contents of the Complaint must be filed under seal.  Doc. 10 at 1.

On July 17, 2020, DiBiase Jr. and Kristen DiBiase filed claims, Docs. 11, 12, and on August 10, 2020, answers.  Docs. 15, 16.

On August 11, 2020, the Government filed a motion to release to the Claimants the Court's order staying the case, Doc. 16, which was granted by this Court on August 14, 2020, Doc. 20.

On August 12, 2020, the Claimants filed a Joint Motion to Dismiss the Verified Complaint,  Doc. 18, and a memorandum in support, Doc. 19.  Subsequently, the Court indicated that the issue of the stay would be addressed prior to the Claimants' motion to dismiss.

On September 9, 2020, the Claimants filed: a Motion to Lift the Stay, Doc. 20, which was followed by the Government's opposition, Doc. 25, and a reply by the Claimants, Doc. 26.  On January 27, 2021, the Court granted the Claimants' motion and ordered the Government to file its response to Claimants' motion to dismiss within fourteen days.  Doc. 27.

### III.    THE LEGAL FRAMEWORK

The Federal Rules of Civil Procedure and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions govern the pleading requirements for a civil forfeiture action.  Fed. R. Civ. P. Supp. R. G(2) ("Supplemental Rules"); Fed. R. Civ. P. 12; *United States v. All Funds on Deposit in Lee Munder Wealth Planning Resource Account*, 137 F. Supp. 3d 125, 128 (D. Mass 2016) (*Lee Munder*); *United States v. $6,999,925.00 of Funds Associated with Velmur Mgmt. Pte Ltd*, 368 F. Supp. 3d 10, 19 (D.D.C. 2019).  Specifically, Supplemental Rule G provides that the complaint must "be verified," state the grounds for jurisdiction and venue, "describe the property with reasonable particularity," "identify the statute

3

under which the forfeiture action is brought," and "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2); *$6,999,925.00*, 368 F. Supp. 3d at 19. Further, Rule E(2)(a) requires the government to set forth its claims "with such particularity that the defendant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a).

The focus of Rule G(2)(f) is whether the government pled sufficient facts to support a reasonable belief that the government will be successful in meeting its burden of proof *at trial*. The Government's burden of proof at trial is to prove that the defendant property is subject to forfeiture by a preponderance of the evidence. 18 U.S.C. § 983(c)(1); *Lee Munder*, 137 F. Supp. 3d at 128. Notably, Supplemental Rule G does not require the government to allege all facts and evidence at its disposal. "The issue is one of pleading, not proof"—as such, it is "sufficient for the Government to simply plead enough facts for the claimant to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation." *United States v. $22,173.00 in U.S. Currency*, 716 F. Supp.2d 245, 248 (S.D.N.Y. 2010); *see also One Gulfstream G-V Jet Aircraft*, 941 F. Supp.2d 1, 13 (D.D.C. 2013); *United States v. Mondragon* 313 F.3d 862, 865 (4th Cir. 2002); *Prevezon Holdings Ltd.*, 122 F. Supp.3d 57, 66–67 (S.D.N.Y. 2015); *United States v. $109,086 in U.S. Currency*, 2005 U.S. Dist. LEXIS 45794, at *8-9 (S.D. Tex. August 10, 2005). A court must accept the factual allegations within the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Prevezon*, 122 F. Supp.3d at 66–67 (S.D.N.Y. 2015); *United States v. $829,422.42 in U.S. Currency*, 2009 WL 1743753, at *5 (D. Conn. June 18, 2009).

As a result, the government is not required to plead all its evidence in a forfeiture

complaint, or even enough evidence to show that it will prevail.  All the government is required

to do is show that, following discovery, it is reasonable to believe that the government will be

able to meet its burden of proof.  *United States v. 5208 Los Franciscos Way*, 385 F.3d 1187,

1193 (9th Cir. 2004) ("the government is not required to prove its case simply to get in the

courthouse door;" if the government had to have sufficient evidence at the time it filed its

complaint to prevail on the merits at the trial, the provision in the Civil Asset Forfeiture Reform Act

of 2000 permitting the government to rely on evidence gathered after the filing of the complaint

would be meaningless); *United States v. $40,000.00 in U.S. Currency*, 2010 WL 2330353, at *4

(W.D.N.C. May 11, 2010) (Rule G(2)(f) supplants Rule E(2)(a); under the new standard, the

facts alleged in the complaint need only be sufficient to support a reasonable belief that the

government will be able to prove its case at trial; they do not have to be sufficient to establish the

forfeitability of the property at the time the complaint is filed).

Further, claimants bear the burden of showing through case law or other legal authority

that a complaint is missing a necessary factual allegation.  *United States v. 1010 North 30th*

*Road, Hollywood, Florida 33021*, 2020 WL 6875749, at *4 (S.D. Fla. Oct. 22, 2020); *see also*

*Fruitstone v. Spartan Race Inc.*, 2020 WL 2781614, at *5 (S.D. Fla. May 29, 2020) ("On a Rule

12(b)(6) motion to dismiss, [t]he moving party bears the burden to show that the complaint

should be dismissed. The movant must support its arguments for dismissal with citations to legal

authority. Where a defendant seeking dismissal of a complaint under Rule 12(b)(6) does not

provide legal authority in support of its arguments, it has failed to satisfy its burden of

establishing its entitlement to dismissal." (internal citations and quotation marks

omitted)); *United States v. Toll*, 2016 WL 7048321, at *2 (S.D. Fla. Dec. 5, 2016).

## IV.  THE GOVERNMENT HAS PLED SUFFICIENTFACTS TO SUPPORT A REASONABLE BELIEF THAT THE GOVERNMENT WILL BE ABLE TO MEET ITS BURDEN OF PROOF AT TRIAL

The record clearly shows that the Government pled sufficient specific facts for the Claimants to understand the Government's theory, file a responsive pleading, and undertake their own investigation. The Claimants' answer consisted of a paragraph-by-paragraph response to the allegations. *See* Theodore Marvin DiBiase Jr.'s Answer to the Complaint, Doc. 15; Kristen DiBiase's Answer to the Complaint, Doc. 16. Had the Claimants been unable to understand the Government's theory, they would have moved to dismiss it on those grounds. Instead, the Claimants not only denied the accusations, but they articulated eight affirmative defenses. Theodore Marvin DiBiase Jr.'s Answer to the Complaint, Doc. 15 at 9-11; Kristen DiBiase's Answer to the Complaint, Doc. 16 at 8-9.

The Memorandum in Support of Claimants' Joint Motion to Dismiss the Verified Complaint states that "the Complaint filed by the government in this case is based entirely on 'conclusory allegations' and is absolutely bereft of any facts connecting the property to any wrongdoing that would support the forfeiture of the Defendant Property under any theory set forth in the complaint." Memorandum in Support of Claimants' Joint Motion to Dismiss the Verified Complaint, Doc. 19 at 8 (*hereinafter* CM, Doc. 19 at page number). In other words, the Claimants' argue that the Government failed to meet the specifications of Rule G(2)(f) of the Supplemental Rules which require the government to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2).

The facts in Task Force Officer (TFO) George Collins' Declaration are sufficient to support a reasonable belief that the Government will be able to meet its burden of proof at trial.

The Complaint alleges that the real property known as 115 Rosedowne Bend, Madison, Mississippi 39110 (Defendant Property) is subject to forfeiture on two grounds.  First, Defendant Property "'constitutes or is derived from proceeds traceable to … a 'specified unlawful activity'" (SUA), making it subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).  Complaint, Doc. 3-1 at 1 (citing 18 U.S.C. § 981(a)(1)(C)).  Specifically, the SUA is theft or bribery concerning programs receiving Federal funds, in violation of 18 U.S.C. § 666(a)(1)(A).  Complaint, Doc. 3-1 at 1.  A violation of 18 U.S.C. § 666(a)(1)(A) is an SUA pursuant to 18 U.S.C. § 1956(c)(7)(D).  *Id.* at 1-2.  Second, the Defendant Property constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956 and 1957, making it subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).  *Id.* at 1.

### 1. The Verified Complaint Provides Sufficient Facts with Regard to Violation(s) of 18 U.S.C. § 666(a)(1).

In their Motion to Dismiss, Claimants contend that "the government's Complaint must allege the elements of the applicable theft offense …"  CM, Doc. 19 at 14.  Claimants further contend that "the Complaint says nothing about the elements of the theft offense that someone allegedly committed (the Complaint does not specifically identify the person who committed the offense), and consequently offers no facts in support of those elements."  CM, Doc. 19 at 14.

The only case listed in support of the proposition that the complaint must allege the elements of the applicable theft offense is *Lee Munder,* 137 F. Supp. 3d at 129-30, but *Lee Munder* simply affirms the principle that "a conclusory allegation is not enough" under the heightened pleading standards applicable to forfeiture under Supplemental Rule G(2)(f).  *Lee Munder*, 137 F. Supp. 3d at 130 (finding that a "conclusory allegation is not enough" and dismissing Gov. Second Amended Complaint because "[f]actual allegations regarding many of the required elements…[were] missing").  It is sufficient for the Government to list the

applicable law and assert facts supporting each of the elements.  The Claimants have not

provided authority that indicates differently.  Further, a reading of the facts in the Complaint

make it clear that DiBiase Jr. is the party engaged in actions which would meet each applicable

element of 18 U.S.C. § 666(a)(1)(A).

For purposes of demonstrating how the Government presented sufficiently detailed facts

on each element and address more specific arguments of the Claimants, however, the

Government provides the Fifth Circuit Pattern Jury Instruction for a violation of 18 U.S.C. §

666(a)(1)(A)[3] to demonstrate what would need to be shown for a violation of this statute in the

Fifth Circuit:

> *First*: That the defendant was an agent of *(name of organization, State, local or Indian
> tribal government, or any agency thereof)*;
>
> *Second*: That *(name of organization, State, local, or Indian tribal government, or agency
> thereof)* was a[n] organization [State government] [local government] [Indian tribal
> government] [any agency thereof] that received in any one-year period, benefits in excess

---

[3] Title 18, United States Code, Section 666(a)(l)(A) specifies that:
    **(a)** Whoever, if the circumstance described in subsection (b) of this section
exists—
        **(1)** being an agent of an organization, or of a State, local, or Indian tribal
        government, or any agency thereof—
        **(A)** embezzles, steals, obtains by fraud, or otherwise without authority
        knowingly converts to the use of any person other than the rightful owner or
        intentionally misapplies, property that—
            **(i)** is valued at $5,000 or more, and
            **(ii)** is owned by, or is under the care, custody, or control of such
        organization, government, or agency ....
    **(b)** The circumstance referred to in subsection (a) of this section is the
organization, government, or agency receives, in any one-year period,
benefits in excess of $10,000 under a Federal program involving a grant,
contract, subsidy, loan, guarantee, insurance, or other form of Federal
assistance ....
    **(d)** As used in this section—
        **(1)** the term agent "means a person authorized to act on behalf of
        another person or a government and, in the case of an organization or
        government, includes a servant or employee, and a partner, director,
        officer, manager, and representative...

of $10,000 under a Federal program involving a grant [contract] [subsidy] [loan] [guarantee] [insurance] [other form of Federal assistance];

*Third*: That the defendant embezzled [stole] [obtained by fraud] [knowingly converted to the use of any person other than the rightful owner without authority] [intentionally misapplied] property that was owned by [under the care, custody, or control of] *(name of organization, State, local or Indian tribal government, or any agency thereof)*; and

*Fourth*: That the property had a value of $5,000 or more.
2.33A Theft Concerning Programs Receiving Federal Funds.

In its Complaint, the Government set forth facts to support the elements of the offense. The Complaint alleged sufficient facts that Theodore DiBiase Jr. (DiBiase Jr.) is an agent of Familiae Orientem LLC. DiBiase Jr. started this company by approaching his friend, Scott Elliott, to use Elliott's name to register this new organization with paperwork initially filed on June 25, 2018, in Wyoming. Complaint, Doc. 3-1 at 5. The next day, DiBiase Jr., as the President of Familiae Orientem LLC, signed a contract with Christy Webb, the Executive Director of the Federal Resource Center of Northern Mississippi (FRC). *Id.* at 5-6. On the contract, DiBiase Jr. wrote that he was the President of Familiae Orientem LLC. *Id.* The contract specified that Familiae Orientem LLC would receive $1,000,000 in exchange for coordinating and creating a RISE program with multiple responsibilities including working with inner-city youth. *Id.* at 6. Of the $1 million contract, FRC's made two payments to Familiae Orientum, LLC, each for $350,000. DiBiase Jr. then controlled the $700,000 paid to Familiae Orientem LLC. *Id.* at 6-10. The only other identified person associated with Familiae Orientem LLC was Scott Elliott, who told law enforcement that he had no control over the company and his participation was limited to helping DiBiase Jr. to set it up. *Id.* at 5.

Claimants argue that neither DiBiase Jr. nor Elliott was an agent for purpose of 18 U.S.C. § 666(a)(1)(A). CM, Doc. 19 at 14. Claimants, in summary, state that DiBiase Jr. cannot be an agent since DiBiase does not have the authority to control the finances of Familiae Orientem

LLC.  CM, Doc. 19 at 14.  This, however, is contrary to the stated facts about DiBiase Jr.'s

control of funds and control of bank accounts as stated in the Complaint that are assumed to be

true.  *Prevezon*, 122 F. Supp.3d at 66–67 (S.D.N.Y. 2015).  In this case, the organization

Familiae Orientem LLC, is under the demonstrated, and arguably sole control, of DiBiase Jr.   If

the argument is that Familiae Orientem LLC cannot qualify as an organization under the statute,

that is incorrect as a matter of law.  Title 18, United States Code, Section 666(a)(1)(A)

specifically applies to contracting organizations that receive federal funds and the agents of those

organizations.  *See United States v. Brown*, 727 F.3d 329, 333-334 (5th Cir. 2013); *United States

v. Madrid*, 610 Fed. App'x. 359, 377 (5th Cir. 2015); *United States v. Moeller*, 80 F.3d 1053,

1056 (5th Cir. 1996).  Any other arguments would relate to evidence and proof, not the adequacy

of the pleading.

     Familiae Orientem LLC received $700,000 in payments on the RISE contract.

Complaint, Doc. 3-1 at 8-10.  The month before DiBiase Jr. signed the RISE contract with FRC,

DiBiase Jr. signed another contract with FRC under his other LLC, Priceless Ventures LLC.  *Id.*

at 4-6.  That contract ran from May 22, 2018 through September 30, 2018.  *Id.* at 5.  Under that

contract, Priceless Ventures LLC was provided with nearly $500,000 in Federal Supplemental

Nutrition Assistance Program (SNAP) funds to provide "emergency food assistance" but failed

to complete any work on that contract.  *Id.* at 5.  Thus, the Complaint demonstrates that DiBiase

Jr.'s organizations received approximately $1,200,000 in Federal funds on contracts with FRC,

one month apart, where little or no work was completed.  *Id.* at 5-6.  Additionally, the Complaint

states that the only work completed on the RISE contract was a planning session which was

staffed by individuals who could not work on the contract based on the specific terms of the

contract and that no other work was completed on the contract.  *Id.* at 6.

Notwithstanding the plethora of properly supported factual allegations set forth in the Complaint, the Claimants mistakenly contend that the Complaint's sole factual assertion is that DiBiase Jr. failed to complete the RISE contract.  CM, Doc. 19 at 14-15.  Claimants assertion is incorrect.  As noted above, the Complaint properly alleges that DiBiase served as President of an organization in which he exercised what appears to be sole control over all operations.  He obtained multiple contracts, in amounts greater than $10,000, where he was to use Federal funds to deliver necessary services to the public; and he misappropriated those funds for his own purposes.  The factual assertions in the Verified Complaint properly establish the elements of the theft of federal funds statute.

Further, Claimants mistakenly contend that the failure to complete such contract(s) is insufficient as a matter of law.  *Id.*  However, Title 18, United States Code, Section 666(a)(1)(A) can be violated when organizations or individuals enter into sham contracts or perform little work on their contracts.  *See Moeller*, 80 F.3d at 1057 ("the record contains overwhelming evidence that the consulting contracts … were sham contracts, and that little work was performed …").

Claimants also argue that "the Complaint does not specifically identify the person who committed the offense."  CM, Doc. 19 at 14.  In another section, however, they object to any discussion of "other contracts, the conduct of other persons, and facts that do not involve the June 25, 2018 contract or the way Claimant Ted DiBiase, Jr. performed under the terms of the contract."  CM, Doc. 19 at 10.  These inconsistent arguments demonstrate that the Complaint clearly shows, and the Claimants clearly understand, that Claimant Ted DiBiase, Jr, was the individual who is factually pled to have completed the actions in violation of 18 U.S.C. § 666(a)(1).

11

In further support of their position, the Claimants rely on *One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 15, noting that court's concerns about missing information including identification of the victim, when the scheme occurred, who was responsible for the acts, whether illegal acts occurred, and the claimant's name in regard to certain allegations. CM, Doc. 19 at 15. This Complaint, however, identifies the SUA proceeds as TANF funds, the dates during which the contract was to be completed, the illegal act, and who was responsible based on the facts naming DiBiase Jr. throughout the Complaint.

The second case Claimants rely on is *United States v. 5833 Coronado Ridge, El Paso, Texas*, 2010 WL 5540939 (W.D. Tex. Oct. 15, 2010). CM, Doc. 19 at 15. There, the court noted multiple problems including that the complaint was replete with ambiguity and vagueness, in part due to the overuse of acronyms, and that the government relied on criminal offenses that were not covered by the alleged forfeiture statute. *5833 Coronado Ridge*, 2010 WL 5540939, at *2.[4] The *Coronado Ridge* case is clearly inapposite. In the instant case, the Government pleaded specific facts, devoid of acronyms, to demonstrate that the Defendant Property "'constitutes or is derived from proceeds traceable to ... a 'specified unlawful activity'" (SUA), making it subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) (theft or bribery concerning programs receiving Federal funds is an), and that the Defendant Property is involved in money laundering in violation of 18 U.S.C. §§ 1956 and 1957, making it subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

---

[4] The Claimants cite this case primarily to support their argument that the Complaint failed to connect the facts to the forfeiture theory. That will be addressed in section II 2 and 2a discussing the tracing of the proceeds of this offense to the purchase of the Defendant Property. CM, Doc. 19 at 15.

2.    **The Movement of the SUA funds**

The Complaint describes the movement of the $700,000 after Familiae Orientem LLC

received the funds.  Complaint, Doc. 3-1 at 6-8.  In summary, on August 8, 2018, DiBiase Jr.

opened account ending in 2604 for Familiae Orientem LLC at Bank Plus and deposited the first

FRC check for $350,000 into that account.  *Id.* at 8.  On August 30, 2018, DiBiase Jr. deposited

the second FRC check for $350,000 into the same account.  *Id.* at 8.  The Complaint

demonstrates how a deposit from Priceless Ventures LLC was also made into the account.  On

October 30, 2018, DiBiase moved $697,759.55 from that account to another newly opened

Familiae Orientem LLC account ending in 2066 at Renasant Bank.  *Id.* at 8-9.

Aside from the purchase of a tractor, no deposits or withdrawals were made from the

Renasant account ending in 2066 until sixteen days later.  *Id.* at 9.  On November 16, 2018,

$401,304.37 was transferred to yet another newly opened account that did contain other funds.

*Id.*  at 9.  On October 26, 2018, DiBiase Jr. and Kristen DiBiase opened the account ending in

4599 .  *Id.*  The transferred funds were wired out of the account the same day by DiBiase to the

attorney handling the closing of the Defendant Property and the funds were used for the down

payment on the Defendant Property.  *Id.*

a.   **The Verified Complaint Provides Sufficient Facts Showing the Defendant
Property is Derived from the Proceeds of the Violation(s) of 18 U.S.C.
§ 666(a)(1).**

As alleged in the Complaint, any real property derived from the proceeds of an SUA is

subject to forfeiture to the United States.  *Id.* at 1; 18 U.S.C. § 981(a)(1)(C).  The Claimants do

not challenge the Government's tracing that shows the TANF funds paid by FRC on the "RISE"

contract were used to make the down payment on the Defendant Property as detailed in Section

II2.  Accordingly, the Government has set forth sufficient facts to demonstrate that the Defendant

Property was derived from the proceeds of a Specified Unlawful Activity, and therefore, is subject to forfeiture.

        **b.**      **The Verified Complaint Provides Sufficient Facts with Regard to Violation(s) of 18 U.S.C. §§1956 and 1957.**

The Government provides the Fifth Circuit Pattern Jury Instruction for a violation of 18 U.S.C. § 1956(a)(1)(B)(i)[5] to demonstrate what would need to be shown for a violation of this statute in the Fifth Circuit:

> *First*: That the defendant knowingly conducted [attempted to conduct] a financial transaction;

> *Second*: That the financial transaction [attempted financial transaction] involved the proceeds of a specified unlawful activity, namely *(describe the specified unlawful activity)*;

> *Third:* That the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

> *Fourth*: That the defendant intended to promote the carrying on of the specified unlawful activity.[6]

> [*Fourth*: That the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.]

2.76A Laundering Monetary Instruments-Proceeds of Unlawful Activity

The Government provides the Fifth Circuit Pattern Jury Instruction for a violation

---

[5] Title 18, United States Code, Section 1956 specifies that:
**(a)(1)** Whoever, knowing that the property involved in financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
...
    **(B)** knowing that the transaction is designed in whole or in part--
        **(i)** to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful
activity; ...
shall be sentenced...
[6] The alleged facts demonstrate concealment money laundering so the promotional element does not apply.

of 18 U.S.C. § 1957[7] to demonstrate what would need to be shown for a violation

of this statute in the Fifth Circuit:

> *First*: that the defendant knowingly engaged [attempted to engage] in a monetary transaction;
>
> *Second*: that the monetary transaction was of a value greater than $10,000;
>
> *Third*: that the monetary transaction involved criminally derived property;
>
> *Fourth*: that criminally derived property was derived from specified unlawful activity;
>
> *Fifth*: that the defendant knew that the monetary transaction involved criminally derived property; and
>
> *Sixth*: that the monetary transaction took place within the United States [the special maritime and territorial jurisdiction of the United States.]
>
> [*Sixth*: that the monetary transaction took place outside the United States and the special maritime and territorial jurisdiction of the United States, but the defendant is a United States person.]
>
> 2.77 Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity

Violations of 18 U.S.C. §§ 1956 and 1957 require that the property be the proceeds of an

SUA or be derived from an SUA, and that the person know that the funds be from "some form of

unlawful activity" or be criminally derived, respectively.[8] As the person who committed the

---

[7] Title 18, United States Code, Section 1957 specifies that:
 (a) Whoever, in any of the circumstances set forth in subsection (d),
 knowingly engages or attempts to engage in a monetary transaction in criminally
 derived property of a value greater than $10,000 and is derived from specified
 unlawful activity, shall be punished as provided in subsection (b) ....
 (f) As used in this section--
 (1) the term "monetary transaction" means the deposit,
 withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce,
 of funds or a monetary instrument (as defined in section 1956(c)(5) of this title)
 by, through, or to a financial institution...
[8] Neither Section 1956 nor 1957 require that the person know that the property was the proceeds of an
SUA or that the property was the derived from an SUA.

underlying SUA, DiBiase Jr. knew knew that the funds were from some unlawful source or were criminally derived.

For a violation of 18 U.S.C. § 1957, all that is additionally required is that DiBiase Jr. engaged or attempted to engage in monetary transactions with more than $10,000 of SUA proceeds, the money paid on the contract. The Complaint provides detailed facts showing that DiBiase Jr. engaged in a monetary transaction of more than $10,000 in SUA funds when he wired the $401,304.37 to the attorney for the down payment on the Defendant Property. Doc. 3-1 at 8.

Claimants argue that the Government must "prove Claimants knew the money was the proceeds of the alleged crime at the time they used it to make the down payment." CM, Doc. 19 at 19. Initially, the Government does not have to prove anything in a civil forfeiture pleading. "The issue is one of pleading, not proof…" *United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 248 (S.D.N.Y. 2010); *see United States v. $49,000 Currency*, 330 F.3d at 376 at n.8 (5th Cir. 2003) ("[t]the Government need not *prove* elements of its case at the pleading stage"). Second, it is a misstatement of law to say that the Government must show that the person who engaged in a monetary transaction knew it was from the specified SUA; instead, the person need only know that it is criminally derived property. 18 U.S.C. § 1957. Third, there is no legal requirement that the person who engaged in the monetary transaction be the same as one or more Claimants in a civil forfeiture action. *Id.* The Complaint provides detailed facts that, in this case, Claimant, DiBiase Jr., is also that person, but the Government is not required to plead anything with regard to the knowledge of either DiBiase Jr, or the second Claimant by virtue of their status as claimants.

For a violation of 18 U.S.C. § 1956(a)(1)(B)(i), in addition to the funds for the financial transaction coming from an SUA and the person completing the financial transaction knowing that they are from unlawful activity, it must be shown that the person completing the transactions knew that the transactions were designed "in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds" of SUA. As detailed in the Complaint and described in Section II2, between August 8, 2018 and October 30, 2018, DiBiase moved the SUA funds between multiple newly opened accounts for the same company and commingled SUA funds with funds from other sources including Priceless Ventures LLC. Finally, DiBiase transferred $401,304.37 from the last Familiae Orientem LLC account to yet another newly opened account in his and his wife's name. The funds scarcely touched the newly opened account before DiBiase Jr. sent it via wire transfer the same day to make the down payment on the Defendant Property. TFO Collins detailed why this combination of facts does in fact help to conceal information about the particulars of the funds, including who controls and owns them.

Claimants first argue that the Complaint "does not suggest facts that would show the requisite knowledge and intent by Claimants to violate a money laundering statute." CM, Doc. 19 at 17. The applicable mental state for the concealment portion of the money laundering statute is *knowledge* (rather than intent) that the financial transactions were designed to conceal. In one case cited by the Claimants, *United States v. Real Property Known as 2291 Ferndown Lane*, 2011 WL 2441254 (W.D. Va. June 14, 2011), the court appears to have switched out the term "in order to" for designed to while the second case cited by Claimants uses the term "intent to conceal." CM, Doc. 19 at 18; *see United States v. One Partially Assembled Drag Racer*, 899 F.Supp 1334 (D.N.J. 1995). The Fifth Circuit

17

Pattern Jury Instruction accurately tracks the exact language as to the mental state required for concealment money laundering under 18 U.S.C. § 1956(a)(1)(B)(i).  2.76A Laundering Monetary Instruments-Proceeds of Unlawful Activity ("[*Fourth*: That the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.]").  Regardless, DiBiase Jr. designed and executed every aspect of this plan so the facts would satisfy the elements of the offense even if a specific intent requirement applied.

Claimants also state that the Complaint provides "no specific information about the various accounts" and "no facts provided about the names the accounts are held in," see, CM, Doc. 19 at 19-20, but these assertions are completely unfounded  For all three accounts, the Complaint provides the opening date, the name of the bank, the last four numbers of the account, and name of the account.  Complaint, Doc. 3-1 at 6-10.  The Complaint provides a summary of the transactions at the beginning and then detailed tables showing relevant transactions in regard to the SUA funds on each account.  *Id.* at 6-10.

Second, Claimants argue that the only fact supporting money laundering is that the SUA proceeds moved through multiple bank accounts prior to being used to make the down payment on the Defendant Property and that is legally insufficient.  CM, Doc. 19 at 20 at fn. 9.  The footnote refers to seven cases.  *Id.*  Of those, only one relates to the movement of funds by an individual and that individual's only action was to move money from a business to the individual's personal account.  *United States v. Blankenship*, 382 F.3d 1110, 1129-31 (11th Cir. 2004).

The facts alleged in the Complaint are sufficient to support money laundering.  *See United States v. 1407 N. Collins St., Arlington, Texas*, 901 F.3d 268, 275 (5th Cir. 2018) (finding

that the government's allegations of commingling of funds, usage of commingled funds as collateral, and the movement of funds through several bank accounts was sufficient to meet the pleading requirements for concealment money laundering to show that the purpose, and not just the effect, was to hide criminal proceeds); *United States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No. 58-400738-1 in the Name of Ishar Abdi & Barbara Abdi*, 255 F. Supp. 2d 56, 68 (E.D.N.Y. 2003) (holding that the government's allegations showing the tracing of fraud funds from banks to the defendant properties allowed the claimant to form a response and undertake an investigation, which meets the requirements of the heightened pleading rules; government met the pleading requirements by alleging that the target commingled proceeds with legitimate funds); *United States v. All Monies in Account # 42032964*, 1992 WL 301257, at *2 (E.D. Pa. Oct.14, 1992) (finding that allegations showing the tracing of fraud funds from bank accounts to the purchase of the defendant properties were sufficient to meet the heightened pleading rules.

**c. The Complaint Provides Sufficient Facts Showing the Defendant Property is Involved in a Transaction in Violation of 18 U.S.C. §§ 1956 and 1957.**

Any real property "involved in a transaction or attempted transaction" in violation of section 1956 or 1957 is subject to forfeiture to the United States. Complaint, Doc. 3-1 at 1; 18 U.S.C. § 981(a)(1)(A). After the Complaint stated facts supporting that a violation of 18 U.S.C. § 666(a)(1)(A) occurred (i.e. the SUA), the Government then stated facts supporting that violations of 18 U.S.C. § 1956(a)(1)(B)(i) and 1957 occurred. At that point, the only requirement is that the Government be able to support the reasonable belief that the Defendant Property will be forfeitable at trial. *United States v. $40,000.00 in U.S. Currency*, 2010 WL 2330353, at *4 (W.D.N.C. May 11, 2010).

19

Claimants note that the Complaint states the statute under which the forfeiture action is brought and then links "the down payment to the June 25, 2018 contract." CM, Doc. 19 at 21. That is precisely what is required. The Complaint fulfilled Supplemental G(2)(e) which requires that the applicable forfeiture statute be identified. Complaint, Doc. 3-1 at 1. The Complaint established the Defendant Property as the subject property, an involved in property, and the property purchased through a violation of 18 U.S.C. § 1957, all of which make it subject to forfeiture. *See United States v. Kivanc*, 714 F.3d 782, 794-95 (4th Cir. 2013) (residence in which fraud proceeds were invested is subject to forfeiture in its entirety as property involved in a money laundering offense, even though legitimate funds were also invested in the property); *United States v. Coffman*, 859 F. Supp.2d 871, 881 (E.D. Ky. 2012) (where half of the $900,000 down payment on a yacht was fraud proceeds, the yacht was forfeitable in its entirety as the subject of a money laundering offense); *United States v. 1700 Duncanville Rd.*, 90 F. Supp. 2d 737, 741 (N.D. Tex. 2000), aff'd, 250 F.3d 738 (5th Cir. 2001) (Table) (where less than half of money used to buy real property was proceeds of food stamp fraud, property was forfeitable in its entirety because the purchase was a violation of section 1957). And, in so doing, the Complaint states sufficiently detailed facts that the Defendant Property is involved in the financial and monetary transactions in violations of 18 U.S.C. §§ 1956 and 1957, respectively.

### III.   IN THE EVENT OF A DEFICIENCY IN THE COMPLAINT, THE GOVERNMENT WOULD ASK FOR LEAVE TO AMEND.

If the Court grants the Claimants' Joint Motion to Dismiss, the Government requests that the Court grant the Motion to Dismiss without prejudice for the Government to amend its Complaint. Pursuant to Federal Rule of Civil Procedure 15, leave to amend "shall be freely given when justice so requires." This applies in the absence of "any apparent or declared reason—such as undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party ..., [or] futility of amendment." *Dime Sav. Bank of Williamsburg Account No. 58-400738-1*, 255 F. Supp.2d at 68 (quoting *Foman v. Davis,* 371 U.S. 178 (1962)).

Notably, the Claimants cite to cases throughout where the courts *granted* the government leave to amend after dismissing complaints. *See Ferndown Lane*, 2011 WL 2441254, at *2; *One Gulfstream G-V Jet Aircraft*, 941 F. Supp.2d 1; *5833 Coronado Ridge,* 2010 WL 5540939, at *2; *Dime Sav. Bank of Williamsburg Account No. 58-400738-1*, 255 F. Supp.2d at 68 (denying a request for attorney's fees and allowing the government to amend its complaint for the first time). Courts have granted leave to amend a second time. *See United States v. $4,480,466.16 in Funds Seized from Bank of Am. Account Ending in 2653*, 2018 WL 4096340, at *2 (N.D. Tex. Aug. 28, 2018) (noting that the government's failure to appropriately amend the verified complaint *in rem* "does not alter the court's conclusion" in allowing leave to amend for the second time).

Claimants argue for the drastic action of a dismissal with prejudice so that the Claimants can be awarded attorney's fees. In support of that position, Claimants cite no cases where a motion to dismiss, based on a failure to comply with Supplemental Rule (G), was granted with prejudice. *See* Fed. R. Civ. P. Supp. R. G(2). Instead, the Claimants cite to three cases where the Government moved to dismiss the Government's civil forfeiture complaint. In two of those cases, the Government moved to dismiss civil forfeiture actions based on allegations of structuring after the Internal Revenue Service changed relevant internal policies. *See, United States v. Thirty-Two Thousand Eight Hundred Twenty Dollars and Fifty Six Cents ($32,820.56) in U.S. Currency,* 838 F.3d 930, 932 (8th Cir. 2016) (dismissal with prejudice denied); *United*

*States v. $107,702.66 in U.S. Currency Seized from Lumbee Guaranty Bank Account Number*

*82002495*, 2016 WL 413093 at *2,4 (E.D.N.C. Feb. 2, 2016) (dismissal with prejudice granted).

The third case cited by Claimants, *United States v. Ito*, 472 Fed. Appx. 841, 842 (9th Cir

2012), similarly does not relate to the adequacy of the pleading in a complaint.  CM, Doc. 19 at

25.  *Ito* arose out of a civil forfeiture filing where the government moved for dismissal of the

civil forfeiture action on the eve of trial after the person who allegedly used the defendant

property in furtherance of drug crimes was acquitted at jury trial of the drug crimes.  *See United*

*States v. One 2008 Toyota Rav 4 Sports Utility Vehicle*, 2010 WL 11531203, at *1 (C.D. Cal.

July 16, 2010); 2:09-cv-0562-SVW-PJW, Opposition to Government's Motion to Voluntarily

Dismiss Motion Without Prejudice; Declaration; Exhibits, Doc. 30 (C.D. Cal. June 21, 2010).

There were no claims made regarding the inadequacy of the complaint.

The Claimants other arguments are labeled as abuses of the forfeiture process.  The

Claimants rely exclusively on the case of *United States v. $307,970.00 in U.S. Currency*, 2013

WL 2251209, at *3 (E.D.N.C. May 22, 2013) as a factually analogous case to support their

position.  CM, Doc. 19 at 22-24.  Directly after Claimants discuss dismissals where the

government moved to dismiss a case without prejudice, Claimants argue "[t]hat is precisely what

happened in" $307,970.00.  *Id.*  But that is not what happened in that case.  The only party that

moved to dismiss in that case was the claimants.  *Id.* at 2.  The case also does not say that the

government moved to amend because the government "recognized the deficiencies in its

complaint" as Claimants allege.  CM, Doc. 19 at 22.  What Claimants fail to mention is that the

denial of the request to amend the complaint was based primarily on the fact that it was in

violation of the court's scheduling order:

> '[A] court's scheduling order is not a frivolous piece of paper, idly
> entered, which can be cavalierly disregarded by counsel without

peril." (citations omitted) Rather, "'the terms of the [scheduling] order must be firmly and fairly enforced by the district judge if it is to serve the purpose of pretrial management designed" to secure the just, speedy, and inexpensive determination of every action.' (citations omitted) Thus where the government knew or in the exercise of reasonable diligence should have known of the evidence upon which it based its proposed amended complaint, and where it could have moved to stay the case, or amend the case management order prior to the expiration of the amendment deadlines, it was not diligent in pursuing its claims. Thus it has not shown good cause for this court to allow it to untimely amend its complaint. The government's motion to amend is therefore denied. *Id.* at 4.

Claimants also aver that obtaining the Motion to Stay at the time the remainder of the case was under seal is an abuse that should result in the dismissal of the case with prejudice. CM, Doc. 19 at 14.  The Claimants cite to no cases where a motion to dismiss with prejudice was granted based on alleged inadequate notice to the opposing party.  Based on the Government's Response to Claimants' Joint Motion to Lift Stay, the Court has already been informed that the Government believed that under the circumstances of the remainder of the case being under seal it did not believe it was seeking the stay *ex parte*.  Doc. 24 at 7.

Further, Claimants argue that the Government acted improperly in filing the civil forfeiture action as it "thwarted a contracted sale of property one week before the scheduled closing." CM, Doc. 19 at 24.  In another section of the brief, Claimants argue that this was done without the Government having to explain why and that this is a "blatant violation of the civil forfeiture laws." *Id.* at 3.  Claimants provide no authority that a civil forfeiture action cannot be filed if real property is under contract for sale or provides that the Government need explain why it is filing a civil forfeiture action otherwise permitted by law.  In fact, the timing of the Government's filing was necessitated by the Claimants attempting to dissipate the tainted asset, the Defendant Property.  In early April 2020, law enforcement attempted to speak with DiBiase

Jr, who declined.  His attorney, Scott Gilbert, made law enforcement aware he represented

DiBiase Jr. thereafter.  At the end of April 2020, law enforcement spoke with the publicly listed

member of Familiae Orientem, Scott Elliott, who alerted DiBiase Jr.  On May 4, 2020, the

Mississippi Office of the State Auditor issued its Single Audit for Year Ending June 30, 2019

(*hereinafter* the "Audit").  The Audit questioned approximately $94,164,608.0008 of

$98,379,121.00 of federal funds provided by MDHS, under DAVIS, to third-party contractor

organizations.  *Id.* at 249. The Defendant Property was listed for sale on May 5, 2020.[9]  As

previously discussed in the Government's Response to Claimants' Joint Motion to Lift Stay, the

Government became aware that the Defendant Property was under contract for sale on or about

May 29, 2020.  Doc. 24 at 4.  The Government's filing of the action was delayed, in part, by the

failure of DiBiase Jr. to comply with the Grand Jury subpoena directed at Familiae Orientem

LLC.  *Id.* at 11-13.[10]

The Claimants then assert that the Government "continues to prevent Claimants from

selling the property."  CM, Doc. 19 at 24.  There are two problems with this statement.  First, the

Government is not required to agree to or facilitate the sale of the Defendant Property while the

civil forfeiture action is pending.  Second, the Government indicated on June 23, 2020, one day

---

[9] In the Reply Brief Re: Claimants Joint Motion to Lift Stay, the Claimants alleged that the Government knew the property was going to be sold much earlier.  Doc. 25 at 10.  The Government is aware that the Defendant Property was refinanced in December 2019.  Clearly something happened between December 2019 and May 4, 2020, that caused the Claimants to put the property up for sale.  It is the undersigned's understanding that the real estate agent merely provided the requested file to law enforcement and they engaged in no substantive discussions.

[10] To ensure that the full extent of any communications relevant to this motion are available for the Court if required, the Government has attached all written communications regarding the Complaint and the Familiae Orientem LLC grand jury subpoena between the undersigned and Mr. Ray and Mr. Gilbert (Attachment A), Assistant United States Attorney (AUSA) Dave Fulcher and Mr. Gilbert (Attachment B), Trial Attorney Justin Weitz and Mr. Gilbert (Attachment C), and law enforcement and Mr. Gilbert (Attachment D).  There is also a voicemail message that Mr. Gilbert left for Mr. Weitz that can be provided upon request.  Last, there was one phone call between Mr. Gilbert and Mr. Weitz in January 2021 in regard to compliance on the Familiae Orientem LLC grand jury subpoena that can be summarized upon request

after the civil forfeiture action was filed, that it was agreeable to the sale of the Defendant

Property.  Attachment A at 7.  On June 24, 2020, the Government provided additional details

including that the funds would be placed in an account under control of the United States

Marshal Service during the pendency of the litigation.  Attachment 7 at 13.  On June 24, 2020,

Mr. Gilbert indicated that unless the Government would agree to a timeline for the case to move

forward (presumably after a stay in the case), the funds should be placed in his firm's trust

account.  Attachment A at 14.  The Government could not agree to that.  The Government

remains open to a sale being completed under its original offer.[11]

The Government often cannot, and usually will not, guarantee how long it will take to

complete a criminal investigation.  The world is entering the second year of a pandemic that has

caused the loss of more than 2,300,000 lives, as of February 10, 2021, and upended almost every

facet of daily life, including the operation of courts and the ability of law enforcement to engage

in some aspects of criminal investigations.  *See* https://covid19.who.int/  The Southern District of

Mississippi has entered 12 special orders since March 2020 to try to ensure the safety of its staff

and the public.  The most recent order, issued January 7, 2021, extended the last order which

prohibits civil jury trials and limits criminal jury trials until further order of the Court.   In re:

Administrative Orders of the U. S. District Court Case No. 3:40-mc-0011, Doc. 81.  In normal

---

[11] In the Procedural History section, the Claimants also discuss certain statements in regard to the attorney representing the proposed buyer of the Defendant Property.  CM, Doc. 19 at 1.  What Claimants fail to note is that when the undersigned was advised that this allegedly occurred, the undersigned and AUSA Fulcher immediately contacted the buyer's attorney to rectify any misunderstanding.  This was followed by communications in writing between the Government attorneys and the buyer's attorney to demonstrate a meeting of the minds on the issue.  These communications were then forwarded to Mr. Gilbert.  This all occurred on the same day that the undersigned was contacted by Mr. Gilbert.  Attachment A at 9-11.  In other sections of the Procedural History, there are either omissions or huge leaps in time that omit substantial communications between the parties that account for the passage of time between certain events as related by the Claimants.  CM, Doc. 19 at 1-2.  The Government does not wish to bring the Court into these communications and only does so reluctantly after incomplete portions of at least one email conversations was attached to a prior reply by the Claimants.

times, the reluctance to speculate how long a criminal investigation, the particulars of which are not disclosed to a claimant, will last is not an abuse of the forfeiture process.  This occurrence during a pandemic is even less noteworthy.

## CONCLUSION

For the foregoing reasons, the Court should deny the Claimants' Joint Motion to Dismiss the Verified Complaint.  If there is a deficiency in the Complaint, the Government requests that the Court allow the Government to amend the Complaint.

Dated:  Wednesday, February 10, 2021          Respectfully submitted,

Deborah Connor, Chief
Money Laundering and Asset Recovery Section
Criminal Division
U.S. Department of Justice

By:      _Dan Fulcher for_____

Kerry Blackburn
Oklahoma Bar (22918)
Trial Attorney
Money Laundering and Asset Recovery Section
Criminal Division
U.S. Department of Justice
Kerry.Blackburn2@usdoj.gov

DARREN J. LAMARCA
Acting United States Attorney

By:      _/s/ Dave Fulcher_____
David H. Fulcher, MSB No. 10179
Assistant United States Attorney
501 E. Court Street – Suite 4.430
Jackson, MS   39201
601-973-2824
dave.fulcher@usdoj.gov

**CERTIFICATE OF SERVICE**

    I, DAVID H. FULCHER, Assistant U.S. Attorney, hereby certify that a filed copy of this motion will be provided to Claimants' counsel, Scott Gilbert, and Mark Ray, via email.

Dated: February 10, 2021

                                       David H. Fulcher
                                       *Assistant United States Attorney*