

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                                      CIVIL ACTION NO. 3:20-cv-415-DPJ-FKB

REAL PROPERTY KNOWN AS
115 ROSEDOWNE BEND, MADISON,
MISSISSIPPI 39110                                              DEFENDANT PROPERTY

### GOVERNMENT'S SURREPLY TO CLAIMANTS' JOINT REPLY BRIEF

The Temporary Assistance to Needy Facilities ("TANF") funds Theodore DiBiase Jr. ("DiBiase Jr.") received from the Family Resource Center of Norther Mississippi ("FRC") constitute "benefits" under 18 U.S.C. § 666, and the Verified Complaint for Forfeiture *in Rem* ("Complaint") provides sufficient facts to meet the *reasonable belief* standard on this point. Complaint, Docs. 3, 3-1.[1] Thus, the Court should reject the Claimants' argument to the contrary and deny the Claimants' Joint Motion to Dismiss the Verified Complaint for forfeiture *in rem*.

**I.     PROCEDURAL HISTORY**

On June 22, 2020, the Government filed the Verified Complaint for Forfeiture in Rem, Doc. 3; a motion to seal the case, Doc. 1; and motion to stay the case, Doc. 4. The court granted the motions. Docs. 2, 4. On July 14, 2020, the Government filed a motion to partially unseal the Complaint so that DiBiase Jr., his counsel, and Kristen DiBiase, then unrepresented, could have full copies of the Complaint, Doc. 6, which the Court granted the same day, Doc. 7. The Government then filed for a protective order as to those documents which was agreed to by counsel for DiBiase Jr. and Kristen DiBiase. Doc. 9. On July 15, 2020, the Court signed the

---

[1] Doc. 3-1 is Exhibit A of the Complaint which consists of the Affidavit of Task Force Officer George Collins.

1

protective order. Doc. 10. The Order requires that any filed documents that reference the contents of the Complaint must be filed under seal. Doc. 10 at 1.

On July 17, 2020, DiBiase Jr. and Kristen DiBiase filed claims, Docs. 11, 12, and on August 10, 2020, answers. Docs. 15, 16.

On August 11, 2020, the Government filed a motion to release to the Claimants the Court's order staying the case. Doc. 16. On August 14, 2020, the Court granted the motion. Doc. 20.

On August 12, 2020, the Claimants filed a Joint Motion to Dismiss the Verified Complaint, Doc. 18, and a memorandum in support, Doc. 19. On September 9, 2020, the Claimants filed a Motion to Lift the Stay. Doc. 20. This was followed by the Government's opposition, Doc. 25, and a reply by the Claimants, Doc. 26. On January 27, 2021, the Court granted the Claimants' motion. Doc. 27.

On February 10, 2021, the Government filed an opposition to the Claimant's motion to dismiss (the Government's Opposition). Doc. 30. On March 1, 2021, Claimants filed their Joint Reply Brief ("Reply") to the Government's Opposition. Doc. 34. On September 1, 2021, the Court filed an Order Requesting Surreply, specifically asking the Government to address the issue of whether the TANF funds paid to Familiae Orientum LLC ("Familiae") qualified as "benefits" under 18 U.S.C. § 666. Doc. 43. The Government's response must be filed no later than September 15, 2021. *Id.* at 2.

## II.   FACTUAL SUMMARY

To begin, the Government briefly summarizes the facts as relevant to the issue of whether the TANF funds constitute "benefits" under 18 U.S.C. § 666. The Complaint alleges that the real property known as 115 Rosedowne Bend, Madison, Mississippi 39110 ("Defendant Property"),

2

based on violation of 18 U.S.C. § 666(a)(1)(A), is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C), and that based on violations of 18 U.S.C. §§ 1956 and 1957, the Defendant Property is subject to forfeiture under § 18 U.S.C. § 981(a)(1)(A). Doc. 3 at 1. Specifically, the Mississippi Department of Human Services (MDHS) received TANF funds, which MDHS then subgranted to organizations in the community to help fulfill the goals of the TANF program. Doc. 3-1 at 3. FRC was one of the largest subgrantees for the TANF funds. *Id.* FRC then further subgranted the TANF funds to other organizations to meet the goals of the TANF program. *Id.*

In May 2018, DiBiase Jr.'s company, Priceless Ventures LLC, entered into a contract with FRC, and in June 2018, DiBiase Jr.'s other company, Familiae, entered into a contract with FRC. Doc. 3-1 at 4-5. The second contract stated that Familiae would be paid $1,000,000.00 to coordinate and create the RISE Program between June 25, 2018, and July 24, 2019. *Id.* at 6. The contract contained a list of 15 responsibilities Familiae was to complete, including "address the needs of inner-city youth." *Id.* No work was completed on either Familiae contract or the Priceless Ventures LLC contract, aside from DiBiase Jr. holding one meeting. *Id.*

Despite this, FRC wrote two checks totaling $700,000.00 to Familiae using the TANF funds from MDHS. *Id.* DiBiase Jr. deposited that money into an initial Familiae bank account where it was commingled with other funds before it was moved to another Familiae bank account. *Id.* at 7. Then, DiBiase Jr. moved $401,304.37 out of that account and into his personal account that he shared with his wife, Claimant Kristen DiBiase. *Id.* at 8. The same day DiBiase Jr. sent those funds by wire transfer to an attorney for the down payment on the Defendant Property. *Id.*

3

## III. THE LEGAL FRAMEWORK

As previously stated in the Government's Opposition, the Federal Rules of Civil Procedure and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions govern the pleading requirements for a civil forfeiture action. Fed. R. Civ. P. Supp. R. G(2) ("Supplemental Rules"); Fed. R. Civ. P. 12; *United States v. All Funds on Deposit in Lee Munder Wealth Planning Resource Account,* 137 F. Supp. 3d 125, 128 (D. Mass 2016) (*Lee Munder*); *United States v. $6,999,925.00 of Funds Associated with Velmur Mgmt. Pte Ltd*, 368 F. Supp. 3d 10, 19 (D.D.C. 2019). Specifically, Supplemental Rule G provides that the complaint must "be verified," state the grounds for jurisdiction and venue, "describe the property with reasonable particularity," "identify the statute under which the forfeiture action is brought," and "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2); *$6,999,925.00*, 368 F. Supp. 3d at 19. Further, Rule E(2)(a) requires the government to set forth its claims "with such particularity that the defendant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a).

The focus of Rule G(2)(f) is whether the government pled sufficient facts to support a reasonable belief that the government will be successful in meeting its burden of proof *at trial*. The Government's burden of proof at trial is to prove that the defendant property is subject to forfeiture by a preponderance of the evidence. 18 U.S.C. § 983(c)(1); *Lee Munder*, 137 F. Supp. 3d at 128. Notably, Supplemental Rule G does not require the government to allege all facts and evidence at its disposal. "The issue is one of pleading, not proof"—as such, it is "sufficient for the Government to simply plead enough facts for the claimant to understand the theory of

forfeiture, to file a responsive pleading, and to undertake an adequate investigation." *United States v. $22,173.00 in U.S. Currency*, 716 F. Supp.2d 245, 248 (S.D.N.Y. 2010); *see also One Gulfstream G-V Jet Aircraft*, 941 F. Supp.2d 1, 13 (D.D.C. 2013); *United States v. Mondragon* 313 F.3d 862, 865 (4th Cir. 2002); *Prevezon Holdings Ltd.*, 122 F. Supp.3d 57, 66–67 (S.D.N.Y. 2015); *United States v. $109,086 in U.S. Currency*, 2005 U.S. Dist. LEXIS 45794, at *8-9 (S.D. Tex. August 10, 2005). A court must accept the factual allegations within the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Prevezon*, 122 F. Supp.3d at 66–67 (S.D.N.Y. 2015); *United States v. $829,422.42 in U.S. Currency,* 2009 WL 1743753, at *5 (D. Conn. June 18, 2009).

As a result, the government is not required to plead all its evidence in a forfeiture complaint, or even enough evidence to show that it will prevail. All the government is required to do is show that, following discovery, it is reasonable to believe that the government will be able to meet its burden of proof. *United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1193 (9th Cir. 2004) ("the government is not required to prove its case simply to get in the courthouse door;" if the government had to have sufficient evidence at the time it filed its complaint to prevail on the merits at the trial, the provision in the Civil Asset Forfeiture Reform Act of 2000 permitting the government to rely on evidence gathered after the filing of the complaint would be meaningless); *United States v. $40,000.00 in U.S. Currency*, 2010 WL 2330353, at *4 (W.D.N.C. May 11, 2010) (Rule G(2)(f) supplants Rule E(2)(a); under the new standard, the facts alleged in the complaint need only be sufficient to support a reasonable belief that the government will be able to prove its case at trial; they do not have to be sufficient to establish the forfeitability of the property at the time the complaint is filed).

5

Further, claimants bear the burden of showing through case law or other legal authority that a complaint is missing a necessary factual allegation. *United States v. 1010 North 30th Road, Hollywood, Florida 33021*, 2020 WL 6875749, at *4 (S.D. Fla. Oct. 22, 2020); *see also Fruitstone v. Spartan Race Inc.*, 2020 WL 2781614, at *5 (S.D. Fla. May 29, 2020) ("On a Rule 12(b)(6) motion to dismiss, [t]he moving party bears the burden to show that the complaint should be dismissed. The movant must support its arguments for dismissal with citations to legal authority. Where a defendant seeking dismissal of a complaint under Rule 12(b)(6) does not provide legal authority in support of its arguments, it has failed to satisfy its burden of establishing its entitlement to dismissal." (internal citations and quotation marks omitted)); *United States v. Toll*, 2016 WL 7048321, at *2 (S.D. Fla. Dec. 5, 2016).

IV.   **THE GOVERNMENT HAS PLED SUFFICIENT FACTS TO SUPPORT A REASONABLE BELIEF THAT THE TANF FUNDS PAID TO FAMILIAE CONTITUTE A "BENEFIT" UNDER 18 U.S.C. § 666.**

In their Reply, Claimants allege that the TANF funds paid to Familiae are not "benefits" under 18 U.S.C. § 666. For the following reasons, Claimants are incorrect.

A.   **Legal Background**

The Complaint alleges the Defendant Property is subject to forfeiture under 18 U.S.C. § 666(a)(1)(A), which states as follows:

> (a) Whoever, if the circumstance described in subsection (b) of this section exists--
>    (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof--
>       (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that--
>          (i) is valued at $5,000 or more, and
>          (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency...
> shall be fined under this title, imprisoned not more than 10 years, or both.

6

Subsection (b) further explains, "The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, *benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.*" 18 U.S.C. § 666(b) (emphasis added).

The word "benefit" is not defined by the statute, except to note that "a grant, contract, subsidy, loan, guarantee, insurance" could be types of federal assistance that are considered benefits. *Id.* "This language indicates that Congress viewed many federal assistance programs as providing benefits to participating organizations." *Fischer v. United States*, 529 U.S. 667, 678 (2000). This wording further "reveals Congress' expansive, unambiguous intent to ensure the integrity of organizations participating in federal assistance programs," *Id.*, and thus 18 U.S.C. § 666(b) should be "broadly construed." *United States v. Hildenbrand*, 527 F.3d 466, 477 (5th Cir. 2008) (citing *United States v. Marmolejo*, 89 F.3d 1185, 1189 (5th Cir. 1996), *aff'd sub nom. Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997)); *United States v. Copeland*, 143 F.3d 1439, 1441-42 (11th Cir. 1998) (quoting S. Rep. 98–225 at 370 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3511). The language is not so broad, however, as to cover "purely commercial transactions with the federal government." *United States v. Copeland*, 143 F.3d 1439, 1441 (11th Cir. 1998). The contractual relationship must constitute "some form of 'Federal assistance' to fall within the scope of the statute." *Id.*; *see also United States v. Bravo-Fernandez*, 913 F.3d 244, 247 (1st Cir. 2019) ("not all federal funds constitute 'benefits' under the statute").

In *Fischer v. United States*, the Supreme Court instructed that to evaluate "whether an organization participating in a federal assistance program receives 'benefits,'" courts must examine the federal organization's "structure, operation, and purpose[.]" 529 U.S. at 681. "The

7

central feature distinguishing statutory 'benefits' from other payments is whether the funds are paid to the entity 'for significant and substantial reasons in addition to compensation or reimbursement.'" *United States v. Lindberg*, 476 F.Supp.3d 240, 263-64 (W.D.N.C. 2020) (quoting *Fischer*, 529 U.S. at 679). Federal funds are considered "benefits" within the meaning of the statute when the organization receiving the benefits is under "substantial Government regulation" that helps the organization "achieve 'long-term objectives' or policy goals 'beyond performance of an immediate transaction.'" *Id.* (quoting *Fischer*, 529 U.S. at 680); *see also United States v. Paixao*, 855 F.3d 1203, 1206 (9th Cir. 2018) (whether federal funds are a benefit depends on "whether the government meant to aid the manufacturer by establishing the program; whether the manufacturer had to comply with certain rules and regulations to participate in the program; and the degree to which the program required the manufacturer to work hand-in-hand with the government."). This analysis is further supported by the legislative history of the statute. "The term 'Federal program' means that there must exist a specific statutory scheme authorizing the Federal assistance in order to promote or achieve certain policy objectives." *Copeland*, 143 F.3d at 1441-42 (quoting S. Rep. 98–225 at 370 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3511).

When the purpose of a payment of federal funds is simply compensation or reimbursement for "ordinary course expenditures[,]" it is not a benefit. *Fischer*, 529 U.S. at 679. *See also* 18 U.S.C. § 666(c) ("This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.").

Additionally, it is "now well established that benefits under [18 U.S.C.] § 666 are not limited solely to primary target recipients or beneficiaries." *United States v. Dubon-Otero*, 292 F.3d 1, 9 (1st Cir. 2002) (citing *Fischer*, 168 F.3d at 1278 ("[T]he plain language of [18 U.S.C.]

8

§ 666(b) does not distinguish between an organization ... that receives 'benefits' directly under a federal program and an organization ... that receives 'benefits' as an assignee under a federal program.")).

     **B.**    **The TANF funds in this case fall directly into the definition of "benefits" in 18 U.S.C. § 666.**

Claimants are correct that the criteria the Court considered in *Fisher* is helpful in determining whether the TANF funds were benefits under 18 U.S.C § 666. Doc. 24 at 6. As explained, *supra*, the *Fischer* factors include the federal organization's "structure, operation, and purpose." 529 U.S. at 679-81. The "inquiry turns on the attributes of the federal program, not on the characteristics of the recipient organization." *Paixao*, 855 F.3d at 1206. A full analysis of these factors and how other courts have interpreted them illustrate that the TANF funds are a benefit under 18 U.S.C. § 666.

In *Fischer*, the defendant operated a corporation that performed billing audits for health care organizations. 529 U.S. at 670. Defendant's corporation received a loan from a municipal agency operating two hospitals that received millions of dollars in Medicare funds. *Id*. The Court found that the Medicare payments constituted a benefit under 18 U.S.C. § 666. *Id*. at 677. It rooted its decision in the fact that Medicare payments are made for "significant and substantial" reasons beyond compensating providers, noting:

> While the payments might have similarities to payments an insurer would remit to a hospital quite without regard to the Medicare program, the Government does not make the payment unless the hospital complies with its intricate regulatory scheme. The payments are made not simply to reimburse for treatment of qualifying patients but to assist the hospital in making available and maintaining a certain level and quality of medical care, all in the interest of both the hospital and the greater community.

*Id*. at 679-80. The Court emphasized the role provider organizations play in "carrying out the program's purposes[,]" *Id*. at 681, and concluded that "Medicare funds, in turn, provide

9

benefits extending beyond isolated, point-of-sale treatment transactions[,]" and thus are a benefit under 18 U.S.C. § 666. *Id.*

Another informative case defining the contours of "benefits" under 18 U.S.C. § 666 is *United States v. Paixao*. In *Paixao*, defendants founded Wounded Marine Careers Foundation ("WMCF"), a non-profit organization focusing on teaching veterans film industry skills. *See* 885 F.3d at 1205. Defendants sought funding from the Vocational Rehabilitation and Employment Program ("VRE") under the Department of Veteran Affairs ("the VA"). *Id.* Relying on *Fischer*, the court found that the federal funds were benefits under 18 U.S.C. § 666, noting:

> [I]n establishing the VRE Program, Congress aimed "to provide for all services and assistance necessary to enable veterans with service-connected disabilities to achieve maximum independence in daily living and, to the maximum extent feasible, to become employable and to obtain and maintain suitable employment." 38 U.S.C. § 3100. The statutory text reveals that the VRE Program exists primarily to benefit veterans—just as Medicare exists primarily to benefit patients...

*Id.* at 1206-07. The court further explained that an organization need not be the primary beneficiary of a federal program to qualify as receiving benefits:

> a federal program may have, as a secondary purpose, the goal of establishing a "sound and effective ... system" for distributing benefits to their ultimate recipients. *Fischer*, 529 U.S. at 680, 120 S.Ct. 1780. That is, federal payments may promote the dual purposes of reimbursing an institution for its services while, at the same time, ensuring that those services remain "available ... [at] a certain level and quality." *Id.* at 679–80.

*Id.* at 1207. The VRE was acting with the goal to both assist veterans and to provide the services necessary to assist the veterans. *Id.* In forming its decision, the court also noted that, like the providers receiving Medicare funds, the WMCF had to comply with substantial federal regulations to receive the funds from the VRE. *Id.*

Here, the structure, operation, and purpose of the TANF program indicates that the TANF funds supplied to Familiae are a benefit under 18 U.S.C. § 666. Like the Medicare program in

10

*Fischer*, or the VRE program in *Paixao*, the TANF program follows a similar structure and purpose. In each, the federal agency grants funds to another organization, which then subgrants the funds to a different organization to effectively execute the original federal agency's mission.

Here, MDHS received the TANF funds, which were authorized under statute, *see* 42 U.S.C. Subchapter IV.[2] As indicated by its name, the TANF program has the goal of providing temporary assistance to needy families. Doc. 3-1. at 2.[3] MDHS then subgranted the TANF funds to FRC, which was supposed to identify specific organizations in the community to fulfill the goals of the program. Doc. 3-1 at 3. The Administration for Children & Families website explains:

> The Temporary Assistance for Needy Families (TANF) program provides states and territories with flexibility in operating programs designed to help low-income families with children achieve economic self-sufficiency. States use TANF to fund monthly cash assistance payments to low-income families with children, as well as a wide range of services.

*See* Administration for Children and Families, Temporary Assistance for Needy Families (TANF) (2020), https://www.acf.hhs.gov/ofa/programs/temporary-assistance-needy-families-tanf.

---

[2] In this section, the Government provides additional information regarding the structure of TANF funds to thoroughly respond to the Court's question. This level of detail regarding the TANF program was not provided in the Complaint, which the Government maintains, as discussed *infra*, is not necessary to plead a sufficient complaint.

[3] Additionally, under 45 U.S.C. § 26.20, the TANF program has the following four purposes:

> (a) Provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives;
> (b) End the dependence of needy parents on government benefits by promoting job preparation, work, and marriage;
> (c) Prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies; and
> (d) Encourage the formation and maintenance of two-parent families.

11

Claimants allege that the Complaint does not identify facts that the "contract was let for the purpose of 'aid[ing] [Familiae] by establishing the program.' *Paixao*, 885 F.3d at 1206." Doc. 34 at 7. The Complaint need not contain these facts. In *Paixao*, the court did not find the purpose of the VRE funds was to aid WMCF; instead, the court found that the purpose of the VRE funds was to both aid veterans and to supply the resources to aid veterans. 885 F.3d at 1207 ("Of course, we do not think that Congress created the VRE Program to benefit WMCF specifically... But the program, as Congress described it, aims to aid veterans and to ensure the viability and quality of the organizations that serve those veterans."). Similarly, though the intended beneficiary might be the needy families the TANF funds ultimately assist, it is clear from the structure of the organization that the goal of the funds is both to assist needy families *and* to provide the services necessary to assist the needy families through organizations like Familiae. *See also Dubon-Otero*, 292 F.3d at 8-9 (Federal funds from National Institute on Drug Abuse paid to for-profit corporation to provide service to AIDS patients constituted a benefit because the Institute had the goal of insuring quality care for AIDS patients).

Additionally, the structure of the TANF program requires the recipients of the funds to follow certain regulations and imposes reporting requirements. Title 48 of the United States Code, sections 262, 263, and 264 detail the accountability provisions associated with the receipt of TANF funds, including penalties if the state misuses its TANF funds. Title 48 of the United States Code, section 265 explains the quarterly reports states must file about the use of their TANF funds. These regulations further illustrate the similarities to *Fisher* and *Paixao*. *See also United States v. Bahel*, 622 F.3d 610, 627-28 (2nd Cir. 2011) (Federal funds authorized by statute and paid as due to the United Nations constituted a benefit because payments were made as a part of a "specific statutory scheme" aiming to advance the government's foreign policy

12

objectives and the United Nations is subject to regulations to ensure the money is "reasonably expended"); *United States v. Briston*, 192 Fed. Appx. 84, 87 (3rd Cir. 2006) (Federal funds from equitable sharing given to local police department constituted benefits because it furthered federal mission of cooperation in drug investigations and police department was subject to substantial regulation because of funds); *Lindberg*, 476 F.Supp.3d at 263 (Federal funds awarded to the North Carolina Department of Insurance constituted benefits because the organization received the funds to achieve the mission of educating seniors about Medicare, the prescription drug program, and supplemental insurance, and even though the Department could "substantively define its program," it had certain reporting requirements and regulations it had to meet).

Claimants further allege that even if the TANF Funds MDHS subgranted to FRC were a benefit, the same TANF funds FRC paid to Familiae were not a benefit. Doc 34 at 77. This argument lacks merit. It makes no difference that Familiae did not receive the TANF funds directly from MDHS. *See Dubon-Otero*, 292 F.3d at 8-9 (Federal funds from National Institute on Drug Abuse that went to the Puerto Rico Department of Anti-Addiciton Services, which then granted a portion of the funds to the Municipality of San Juan, which then paid Advanced Community Health Services, the defendant organization, constituted a benefit under 18 U.S.C. § 666). The analysis focuses on the program from which the federal funds are derived, not the organization ultimately spending them. *See Paixao*, 885 F.3d at 1207.

Claimants also assert that the Complaint does not sufficiently distinguish this transaction from "'compensation or reimbursement' for routine commercial business." Doc. 34 at 6. In making this argument, Claimants rely on *Copeland*. There, the court found that federal funds the government paid to Lockheed Aeronautical Systems Company (Lockheed) in exchange for

aircrafts did not constitute a "benefit" because Lockheed did not receive any "federal assistance," and because it was a purely commercial transaction. 143 F.3d at 1442. This was the case even though the Government gave Lockheed detailed specifications for the aircrafts, and even though Congress "annually appropriates specific sums for aircraft procurement, testing, and research and development." *Id.* The court noted these factors did "not show that Lockheed received benefits under a federal program through a contract or any other form of federal assistance." *Id.* *See also, United States v. Stewart*, 727 F.Supp. 1068 (ND Tex. 1989) (Federal funds paid to defense contractor not a benefit because it was a purely commercial transaction).

The TANF funds in this case are easily distinguishable from the funds paid to Lockheed. Here, Familiae did not receive a sum of money to deliver a commercial good or service to the Government. Instead, Familiae received special grant money set aside by statute to assist needy families, and Familiae was given this money under the pretense that the organization would be providing services to those needy families. Doc. 3-1 at 5-6.

This case is more comparable to *United States v. Hildenbrand*, 527 F.3d 466 (5th Cir. 2008). There, Hildenbrand operated a non-profit known as the Community Housing Fund ("CHF"), which was selected to participate in the U.S. Department of Housing and Urban Development's ("HUD") Single Family Affordable Housing Program ("SFAHP"). *Id.* at 470. The purpose of SFAHP was to "sell properties at a discount to nonprofits, who would then pass on the discount received from HUD to increase home ownership opportunities for low- and moderate-income families and individuals." *Id.* at 470-71. Hildenbrand purchased two discounted homes through SFAHP and used co-defendant Stone's construction company to perform improvement work on the homes. *Id.* at 476.

Stone argued that the discounts on the homes CHF received from SFAHP were not "benefits" under 18 U.S.C. § 666 because HUD and CHF were engaged in a "purely commercial transaction, with both parties deriving a benefit from the venture." *Id.* at 477. The court rejected this argument, noting:

> Because there is a statutory scheme authorizing the discounts on SFAHP homes and because the scheme furthers the public policy objectives of both expanding home ownership opportunities for low- and moderate-income purchasers and strengthening neighborhoods, we conclude that participation in the SFAHP qualifies as federal assistance.

*Id.* at 478.

Similarly, TANF funds are a part of a larger statutory scheme that serve the Government's goal of providing assistance to needy families. Familiae participated in this program by accepting the funds and purporting to execute a contract that would further the mission of the government. Doc. 3-1 at 5-6. Thus, the TANF funds qualify as federal assistance and a benefit under 18 U.S.C. § 666. *See also Paixao*, 885 F.3d at 1207 ("federal payments may promote the dual purposes of reimbursing an institution for its services while, at the same time, ensuring that those services remain 'available ... [at] a certain level and quality.'" (quoting *Fischer* 529 U.S. at 679–80)). TANF funds are more akin to Medicare funds, *see Fischer*, funds set aside to support veterans, *see Paixao*, and SFAHP discounts, *see Hildenbrand*, because they are part of a statutory scheme to provide services, as opposed to funds paid to Lockheed, *see Copeland*, or a defense contractor, *see Stewart*, for obtaining aircrafts.

## C.  The facts alleged in the complaint provide a reasonable belief that the TANF funds are a benefit.

As indicated in the Legal Framework section, *supra*, a Civil Forfeiture Complaint need only "be verified," state the grounds for jurisdiction and venue, "describe the property with reasonable particularity," "identify the statute under which the forfeiture action is brought," and

15

"state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2); *$6,999,925.00*, 368 F. Supp. 3d at 19. Notably, Supplemental Rule G does not require the government to allege all facts and evidence at its disposal, *See United States v. $22,173.00 in U.S. Currency*, 716 F. Supp.2d at 248, and the court must accept the factual allegations within the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Prevezon*, 122 F. Supp.3d at 66–67 (S.D.N.Y. 2015); *United States v. $829,422.42 in U.S. Currency*, 2009 WL 1743753, at *5.

The Government has met this standard. The facts alleged in the Complaint sufficiently show that the TANF funds paid to Familiae were part of a statutory scheme, as opposed to a commercial payment. The Complaint explains that the TANF funds, along with funds from other well-known welfare program such as the Supplemental Nutrition Assistance Program (SNAP) and the Social Service Block Grant, were given to MDHS from the federal government. Doc. 3-1 at 3. It explains how MDHS was to oversee these funds, and that some of the funds were "subgranted to organizations in the community to help fulfill the goals and mandates of those programs[,]" and how FRC was one of the subgrantees. *Id.* The Complaint also details the contract between FRC and Familiae, explaining how the "RISE Program" was created to serve "inner-city youth," in part by "engaging employers to 'assist in improving opportunity and outcomes in the workforce.'" *Id.* at 4.[4] The goals of this contract are clearly in line with the goals of the TANF statutory scheme. In no way does the Complaint suggest Familiae is supplying a commercial good or service as part of the "usual course of business" akin to an

---

[4] Claimants also assert that the Complaint did not allege Familiae worked "hand-in-hand" with the Government. Doc. 34 at 7. But, by signing a contract with FRC detailing the type of programing Familiae would provide, DiBiase Jr. was working hand-in-hand with MDHS, who was acting through FRC, to execute the Federal Government's policy goals.

aircraft. The Complaint indicates Familiae is supposed to be providing a social service to help the community as detailed in its contract with FRC, as the TANF funds are intended to do.

In the Complaint, the Government did not detail every fact about the TANF program, because the Government is not required to do so. *See United States v. $22,173.00 in U.S. Currency*, 716 F. Supp.2d at 248. Taking the facts in the Complaint and drawing all reasonable inferences in favor of the plaintiff, the court should infer that the TANF funds are a benefit under 18 U.S.C. § 666. The Complaint explained that the TANF funds were federal, that the funds were from the Temporary Assistance to Needy Families program, and that MDHS subgranted the funds to FRC so that FRC could find an organization in the community to "meet the goals of the program." Doc. 3-1 at 2-3. These facts provide a reasonable belief that the TANF funds are a benefit.

Additionally, claimants bear the burden of showing through case law or other legal authority that a complaint is missing a necessary factual allegation. *See United States v. 1010 North 30th Road, Hollywood, Florida 33021*, 2020 WL 6875749, at *4; *see also Fruitstone v. Spartan Race Inc.*, 2020 WL 2781614, at *5 ("The movant must support its arguments for dismissal with citations to legal authority.") The Claimants have not met their burden of showing that the Complaint is missing a factual allegation. Though Claimants allege there are "facts" missing from the Complaint, their arguments are not based on case law.

Claimants assert in their Reply that the Complaint did not allege that Familiae used the "actual funds it was paid to carry out its contractual obligations." Doc. 34 at 3. It further asserts the Government tried to recharacterize this statement in the Opposition by stating that in DiBiase Jr.'s contracts, he was supposed to use federal funds to provide services to the public. *Id.*

The Government's statement in the Opposition is the same set of facts alleged in the Complaint. DiBiase Jr. was given federal funds, including TANF and SNAP funds, to fulfill the Familiae and Priceless Venture contracts. Doc. 3-1 at 3, 5, 6. The Complaint does not need to allege that Familiae was "required" to use the funds paid to him to complete the contract. Claimants cite no case to say this is a component of the "benefits" analysis. Familiae was paid TANF funds on a contract that was for the supply of services in line with the goals of the TANF program.[5] The expectation was that Familiae would then supply the TANF related services. There was no requirement Familiae use the TANF funds to pay for every aspect of the services.

Further, Claimants argue the Complaint does not allege that Familiae had to engage in any reporting requirements. Doc. 34 at 7. Claimants assert no case law supporting a requirement that the organization ultimately using the funds be the one that does the reporting. Rather, reporting is just one factor weighed by courts to determine if the federal funds are a benefit. The regulatory requirements discussed in *Fischer* applied to the hospitals that granted the funds to the organization run by the defendant, not reporting requirements imposed on the defendant's organization. *See* 529 U.S. at 627.

Thus, the facts in the Complaint provide a reasonable belief that the TANF funds are a benefit under 18 U.S.C. § 666. The Claimant's motion to dismiss is meritless and should be denied.

---

[5] Claimants also assert that the Government should have attached the Familiae Contract in question. Doc. 34 at 3. The Government does not need to attach the contract. Courts consistently uphold Civil Forfeiture Complaints based on affidavits when they are challenged by Motions to Dismiss. *See, e.g., United States v. $40,960.00 in U.S. Currency*, 831 F.Supp.2d 968, 970-71 (N.D. Tex. 2011) (district court upheld civil forfeiture complaint based on affidavit).

V.      IN THE EVENT OF A DEFICIENCY IN THE COMPLAINT, THE GOVERNMENT WOULD ASK LEAVE TO AMEND.

If the Court grants the Claimants' Joint Motion to Dismiss, the Government renews its request that the Court grant the Motion to Dismiss without prejudice for the Government to amend its Complaint. Pursuant to Federal Rule of Civil Procedure 15, leave to amend "shall be freely given when justice so requires." This applies in the absence of "any apparent or declared reason— such as undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [or] futility of amendment." *Dime Sav. Bank of Williamsburg Account No. 58-400738-1*, 255 F. Supp.2d at 68 (quoting *Foman v. Davis*, 371 U.S. 178 (1962)).

## CONCLUSION

For the foregoing reasons, the Court should find that the TANF funds constitute "benefits" under 18 U.S.C. § 666(a) and deny the Claimants' Joint Motion to Dismiss the Verified Complaint. If there is a deficiency in the Complaint, the Government requests that the Court allow the Government to amend the Complaint.

Dated: Wednesday, September 15, 2021

    Respectfully submitted,

    DEBORAH CONNOR, CHIEF
    Money Laundering and Asset Recovery Section
    Criminal Division
    U.S. Department of Justice

By:    /s/ Sarah Roessler
    Sarah E. Roessler
    Trial Attorney
    Money Laundering and Asset Recovery Section
    Criminal Division
    U.S. Department of Justice
    Sarah.Roessler@usdoj.gov

DARREN J. LAMARCA
Acting United States Attorney

By: _____
for David H. Fulcher, MSB No. 10179
Assistant United States Attorney
501 E. Court Street – Suite 4.430
Jackson, MS  39201
601-973-2824
dave.fulcher@usdoj.gov

**CERTIFICATE OF SERVICE**

I, DAVID H. FULCHER, Assistant U.S. Attorney, hereby certify that a filed copy of this motion will be provided to Claimants' counsel, Scott Gilbert, and Mark Ray, via email.

Dated: September 15, 2021

_____
for David H. Fulcher
*Assistant United States Attorney*