UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                                        PLAINTIFF

V.                                                           CIVIL ACTION NO. 3:20-CV-415-DPJ-FKB

REAL PROPERTY KNOWN AS 115                                              DEFENDANT
ROSEDOWNE BEND, MADISON,
MISSISSIPPI 39110

ORDER

In June 2020, Plaintiff United States filed a verified complaint seeking forfeiture of real property identified as 115 Rosedowne Bend, Madison, Mississippi 39110 ("the Property"). According to the Government, the Property is forfeitable under 18 U.S.C. §§ 981(a)(1)(A) and (C), because it was involved in a money-laundering transaction that violated 18 U.S.C. §§ 1956 and 1957 and "constitutes or is derived from proceeds traceable to a . . . 'specified unlawful activity,'" to wit, "theft or bribery concerning programs receiving Federal Funds, in violation of 18 U.S.C. § 666(a)(1)(A)." Compl. [3] at 1.  Claimants Theodore DiBiase, Jr., and Kristen DiBiase—who own the Property and hoped to sell it—have jointly moved to dismiss the Complaint.  *See* Mot. [18].  The Court finds that their motion should be granted but that the Government should be allowed to seek leave to amend.

I.      Background[1]

The Government contends that the Property is subject to forfeiture because DiBiase Jr. purchased it with funds derived from a scheme that defrauded the federal Temporary Assistance to Needy Families ("TANF") program.  In Mississippi, TANF funds are first funneled through

---

[1] The following facts are based on Task Force Agent George Collins's Affidavit [3-1], attached as an Exhibit to the Complaint [3].

the Mississippi Department of Human Services ("MDHS"), which both uses the funds and further subgrants them. Collins Aff. [3-1] ¶ 6. One of the two largest recipients of TANF funds in this state is the Family Resource Center of Northern Mississippi ("FRC"). Like MDHS, FRC also contracts and subgrants. *Id.*

On June 26, 2018, FRC entered into an agreement with Familiae Orientem LLC ("Familiae"), a limited-liability company registered in Wyoming. *Id.* ¶¶ 10, 11. Claimant DiBiase Jr. owns Familiae and, in his purported capacity as Familiae's president, signed the agreement with FRC. *Id.* ¶¶ 6, 11.[2] Per the agreement, Familiae was to be paid $1 million to "coordinate and create the RISE program serving inner city youth." *Id.* ¶ 11. The contract included a "non-exclusiv[e] list of 15 responsibilities in its scope of duties, . . . including engaging employers 'to assist in improving opportunity and outcomes in the workforce.'" *Id.* Familiae was required to "provide all personnel necessary to carry out the program." *Id.* ¶ 12.

John Davis, MDHS's executive director at the time, instructed personnel at FRC to make early payments on the contract, and FRC wrote two $350,000 checks to Familiae—one dated June 26, 2018, and the other August 23, 2018. *Id.* ¶¶ 11–13. These checks drew on TANF funds obtained by FRC from MDHS. *Id.*

Despite these payments, the FRC-Familiae contract was never completed. Shortly after Familiae conducted a planning session in June 2018, Davis announced the remaining work on the RISE project would be taken "in house" at MDHS, and it was later abandoned. *Id.* ¶ 12. No portion of the $700,000 given to Familiae was returned. Rather, DiBiase Jr. allegedly transferred

---

[2] The Government's filings have included facts related to another entity DiBiase Jr. controlled, Priceless Ventures LLC. *See* Collins Aff. [3-1] ¶ 9; Pl.'s Opp'n Mem. [31] at 1, 10; Pl.'s Surreply [44] at 3. But the Government has not argued that those facts are relevant to this motion, so the Court focuses on Familiae.

the funds from the FRC checks among three bank accounts, the first two owned by Familiae, and the last owned personally by Claimants. *Id.* ¶¶ 15–21. Through this movement, the funds were allegedly commingled with $36,001.04 in unrelated money. *Id.* ¶¶ 15–20. Finally, from the personal account, $401,304.37 was wired to an attorney to make a down payment on the Property. *Id.* ¶ 20. At least $365,303.33 of the down payment came from the FRC checks. *See id.* ¶ 21.

Because it believes the funds were tainted, the Government says the Property should be forfeited, but Claimants have moved to dismiss the Complaint. Briefing is now complete, and the Court has both personal and subject-matter jurisdiction over the dispute.

II.   Standard

"Civil forfeiture is an *in rem* proceeding against real or personal property, litigated as 'though [the object] were conscious instead of inanimate and insentient.'" *Medina-Rodríguez v. $3,072,266.59*, 471 F. Supp. 465, 472 (D.P.R. 2020) (quoting *Various Items of Pers. Prop. v. United States*, 282 U.S. 577, 581 (1931)). Under Rule G(8)(b)(i) of the Supplemental Rule for Admiralty and Maritime Claims and Civil Forfeiture Actions, "[a] claimant who establishes standing to contest forfeiture may move to dismiss the action under Rule 12(b)."

Notably, the pleading standards in a forfeiture action differ from those under Federal Rule of Civil Procedure 8. In a civil-forfeiture case, Supplemental Rule G(2) applies and states that a civil-forfeiture complaint must:

(a)   be verified;
(b)   state the grounds for . . . jurisdiction . . . and venue;
(c)   describe the property with reasonable particularity;
(d)   if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;
(e)   identify the statute under which the forfeiture action is brought; and
(f)   state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Rule G(2)(f) captured an evolution of Rule E(a)(2)'s application to civil-forfeiture cases; the advisory committee's note makes clear that caselaw interpreting Rule E(a)(2) has been carried forward "without change." Fed. R. Civ. P. Supp. R. G(2)(f) *committee note* (citing *United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002)).

"Rule [G(2)] imposes a substantive pleading requirement." *United States v. $49,000 Currency*, 330 F.3d 371, 376 n.8 (5th Cir. 2003). While "the Government need not prove elements of its case at the pleading stage, the Government is compelled by the specificity requirement of Rule [G(2)(f)] to allege facts which are sufficient to support a reasonable belief that those elements are met." *Id.* (citation omitted). Ultimately, "the Government must allege facts supporting a reasonable belief that it will be able to bear its burden at trial." *Id.*; *accord* Fed. R. Civ. P. Supp. R. G(8)(b)(ii).

III.    Analysis

The Government seeks forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and (C). As discussed next, both provisions require proof that the property for which forfeiture is sought relates to an underlying specified unlawful activity. The only specified unlawful activity the Government has identified in this case is an alleged violation of 18 U.S.C. § 666(a)(1)(A), which addresses theft concerning programs receiving federal funds. Compl. [3] at 1; Pl.'s Opp'n Mem. [31] at 1. But Claimants say the Government failed to plausibly plead a § 666(a)(1)(A) violation and, absent a viable claim under that section, neither forfeiture provision applies. They are correct.

A.    Forfeiture Provisions

To begin, § 981(a)(1)(A) captures property "involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property." Here, the Government asserts that § 981(a)(1)(A) applies because DiBiase Jr.

4

violated 18 U.S.C. §§ 1956 and 1957, both of which address money laundering. Significantly, both statutes require proof that the laundered funds were "proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1); *accord* § 1957(a). The term "specified unlawful activity" is defined in § 1956(c)(7)(D) to include, among other offenses, violations of § 666, the statute upon which the Government bases its forfeiture claim.

Similarly, § 981(a)(1)(C) captures property that "constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (defined in section 1956(c)(7) of this title)." Again, § 666 violations are among the enumerated specified unlawful activities. Thus, the Government's claims all hinge on a properly pleaded § 666 charge.

B.       28 U.S.C. § 666(a)(1)(A)

Section 666(a)(1)(A) targets fraud involving organizations that receive certain federal funds. *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020); *United States v. Hildenbrand*, 527 F.3d 466, 478 (5th Cir. 2008).[3] Under that statute, the Government must show that (1) an agent

---

[3] The relevant text states:

> (a) Whoever, if the circumstance described in subsection (b) of this section exists
>
> (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof--
>
>> (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that--
>>
>> (i) is valued at $5,000 or more, and
>>
>> (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or
>
> . . .
>
> shall be fined under this title, imprisoned not more than 10 years, or both.

5

unlawfully obtained or intentionally misapplied at least $5000 of property under the control or custody of his/her principal and (2) the principal received at least $10,000 in federal benefits. *See* 18 U.S.C. §§ 666(a)(1), (b); *United States v. Brown*, 727 F.3d 329, 334, 337–38 (5th Cir. 2013). *See generally United States v. Jimenez*, 705 F.3d 1305, 1308–10 (11th Cir. 2013) (discussing the broad meaning of the statutory term "intentionally misapplies"). To establish the required federal nexus, the Government must show the defendant agent was "authorized to act on behalf of the entity receiving federal moneys with respect to its funds." *United States v. Thomas*, 847 F.3d 193, 199 (5th Cir. 2017) (emphasis removed) (quoting *United States v. Phillips*, 219 F.3d 404, 411 (5th Cir. 2000)) (citing *Sabri v. United States*, 541 U.S. 600, 604–05 (2004)).

The Government well explains its § 666 theory in its memorandum in opposition to dismissal. DiBiase Jr. was an agent for Familiae; Familiae received the requisite amount of federal funds; and Familiae failed to complete the contracts for which it received federal funds from MDHS through FRC. Pl.'s Opp'n Mem. [31] at 9–11. Under this theory, the Government has consistently identified MDHS and FRC as the defrauded organizations. *See* Collins Aff. [3-1] ¶ 13 (stating that Familiae kept all "TANF funds obtained by FRC from MDHS"); *id.* ¶ 21 (tracing "unearned FRC funds"); Pl.'s Opp'n Mem. [31] at 2 (stating that Familiae took federal funds from FRC without performing under the contract); *id.* at 10 (same); *id.* at 11 (arguing that "failure to complete such contract(s)" is sufficient to violate § 666).

---

> (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance

18 U.S.C. § 666.

But Claimants say this theory is flawed because "DiBiase Jr. was not an agent of the entity that the purportedly unlawful funds were obtained from," either MDHS or FRC. Clmnts.' Reply [34] at 1. In other words, if MDHS and/or FRC are the defrauded organizations under § 666, as the Government has alleged, then the Government must show that DiBiase Jr. was *their* agent, not Familiae's agent.

This construction is consistent with the statutory language, which protects the organization for which the defendant is an agent. Section 666(a)(1)(A) makes it a federal offense when someone, "being an agent *of an organization*" unlawfully takes property valuing $5,000 or more "that . . . *is* owned by, or *is* under the care, custody, or control *of such organization*." (Emphasis added). The phrase "of such organization" plainly reflects that the statute addresses money taken from the organization for which the defendant is an agent. *Id.* And because the statute is written in the present tense regarding the organization in possession or control of the property, it could not apply to organizations that may have passed the money to the principal before the agent took it.

Consistent with that construction, the typical § 666(a) cases all address agents who took money from a qualifying principal. Indeed, the Fifth Circuit described the essential elements of the offense as including proof that the "agent *of an organization* . . . unlawfully obtained funds *from this organization*." *Brown*, 727 F.3d at 334 (emphasis added) (quoting *United States v. Abu-Shawish*, 507 F.3d 550, 556 (7th Cir. 2007)). *Brown* is not squarely on point because it reflects the typical case and there was no assertion that the defendants unlawfully took money from an organization that was not their principal. *Id.* at 333–34 (explaining that defendants were charged with conspiring with agent for defrauded principal). Still, the *Brown* court explained the

7

elements in a way that comports with the statutory language, and this Court has been unable to find cases construing § 666 in a way that supports the Government's pleaded theory.

The Fifth Circuit Pattern Jury Instruction for § 666(a)(1)(A) further supports this construction.  The instruction includes four elements:  (1) "[t]hat the defendant was an agent of (*name of organization* . . .)"; (2) "[t]hat (*name of organization* . . .) was a[n] organization . . . that received in any one-year period, benefits in excess of $10,000 under a Federal program"; (3) that the defendant unlawfully obtained "**property that was owned by** [under the care, custody, or control of] (*name of organization* . . . .)"; and (4) "[t]he property had a value of $5,000 or more."  Fifth Circuit Pattern Jury Instruction (Criminal) 2.33A (bold emphasis added).  Element three instructs the jury that the defendant must take property "owned by" the organization for which he or she was an agent.  *Id.*

In sum, the Government has provided facts suggesting that the money Familiae received was wrongfully taken from MDHS or FRC.  *See, e.g.*, Collins Aff. [3-1] ¶¶ 7–8.  But there is no suggestion that DiBiase Jr. was an agent for MDHS or FRC as § 666 requires.  *See* 18 U.S.C. § 666(a); *see also id.* § 666(d) (defining agents).  Nor has the Government pleaded any facts suggesting that DiBiase Jr. unlawfully took property from Familiae.  Absent one or the other, the Complaint fails to plausibly allege that DiBiase Jr. violated § 666.  And because the Government has not sufficiently pleaded a specified unlawful activity, its civil-forfeiture claim fails.

C. Dismissal with/without Prejudice

Claimants have asked the Court to dismiss this case with prejudice.  The Government counters that if the Complaint is deficient, then Claimants' motion should be granted "without prejudice for the Government to amend its Complaint."  Pl.'s Opp'n Mem. [31] at 20.

The Government's approach is not novel; "it is not unusual for plaintiffs who oppose a motion to dismiss to request leave to amend in the event the motion is granted." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Considering the consequences of dismissal

> and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Id.* Thus, "[a]lthough a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted).

In this case, it is not apparent that the Government has pleaded its best case. While the claim that DiBiase Jr. violated § 666(a)—in the manner asserted—was not plausibly pleaded, the Complaint includes troubling assertions that might support a different theory under § 981(a)(1)(A) or (C).[4]

Claimants make three other arguments that the Court will address. First, the Government was not required to file a proposed amended complaint under Local Uniform Civil Rules 7(b)(2) and (15) because it has not yet moved for leave to amend. Clmnts.' Reply [34] at 14; *cf. Parham v. Clinton*, 374 F. App'x 503, 505 (5th Cir. 2010) ("[A] '"bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a).""" (quoting

---

[4] It is not the Court's role to speculate about the ways the Government might amend the Complaint.

*United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 385 (5th Cir. 2003)). Had the Government moved for leave to amend, it would have been required to file a separate motion. *See* L.U. Civ. R. 7(b)(C)(3) ("A response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response."). The Court construes the Government's position as an argument that dismissal should be without prejudice to its right to seek that relief.

Second, Claimants say dismissal with prejudice is an appropriate sanction for the Government's conduct in this case. For example, they complain that the Government thwarted their efforts to sell the Property and attempted to strongarm them into forfeiting their rights by filing a "barebones and legally inadequate complaint." Clmnts.' Supp. Mem. [19] at 24. While the Court agrees that the Complaint is legally inadequate, it is not barebones, and the Court is not yet convinced that it cannot be cured. Moreover, a civil-forfeiture suit would be an appropriate remedy for the Government to prevent a person under investigation for money laundering from selling allegedly tainted property. In any event, while the Court recognizes that this suit may cause financial hardship, Claimants have not demonstrated that the Government's conduct necessitates dismissal with prejudice.

Finally, the DiBiases suggest that the Complaint should be dismissed with prejudice to entitle them to attorneys fees under the Civil Asset Forfeiture Reform Act ("CAFRA"). Clmnts.' Supp. Mem. [19] at 25 (citing 28 U.S.C. § 2465(b)(1)). CAFRA allows such recovery when a claimant "substantially prevails," § 2465(b)(1), but a party is not considered to have substantially prevailed if a civil complaint is dismissed without prejudice, *United States v. Minh Huynh*, 334 F. App'x 636, 639 (5th Cir. 2009) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001)).

Perhaps Claimants will be entitled to attorneys fees at some point, but the case is not over. And, as the Government demonstrates, courts have repeatedly allowed amendments after dismissing civil-forfeiture cases. Pl.'s Opp'n Mem. [31] at 21; *see, e.g.*, *One Gulfstream G-V Jet Aircraft*, *United States v. One Gulfstream G-V Jet Aircraft*, 941 F.2d 1, 16 (D.D.C. 2013) ("For the foregoing reasons, the court grants the defendants' motion to dismiss. But the government is granted leave to amend the complaint."); *United States v. $4,480,466.16 in Funds Seized from Bank of Am. Acct. Ending in 2653*, No. 3:17-CV-2989-D, 2018 WL 4096340, at *2, *5 (N.D. Tex. Aug. 28, 2018) (allowing an opportunity to amend for the second time). Dismissal will be without prejudice.

IV.     Conclusion

The Court has considered all arguments; those not addressed would not change the results. For the reasons stated, Claimants' Joint Motion to Dismiss [18] is granted except for their request for dismissal with prejudice. The Government is given until November 24, 2021, to file a properly supported motion seeking leave to amend. Failure to seek leave to amend by that date will result in the dismissal of this case with prejudice and without further notice.

**SO ORDERED AND ADJUDGED** this the 3rd day of November, 2021.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE